Argued May 7, affirmed July 17, 1975

CLEARWATER, *Appellant, v.*
WAGNER ET AL, *Respondents.*
537 P2d 532

*Herbert R. DeSelms,* Lincoln City, argued the cause and filed a brief for appellant.

No appearance for respondents.

BRYSON, J.

Plaintiff's suit seeks to establish a constructive trust and that defendant Wagner be judged to hold title to the "Inez M," a small fishing boat, as trustee for plaintiff. The trial court denied relief and plaintiff appeals. The defendant Thomas E. Watts made no appearance at trial. Neither defendant appeared on appeal to this court.

■ We review de novo. The testimony of plaintiff Clearwater and defendant Wagner is the only evidence offered that reveals any light on whether or not there is a constructive trust. Plaintiff, while separated from her husband, met defendant Watts in June of 1971 at Neskowin, Oregon. A friendly, personal relationship quickly developed and plaintiff came to admire Watts as a person she could trust. Plaintiff testified that in January, 1972, Watts informed her that he had purchased some McCulloch Oil stock and as a favor had also purchased stock in the amount of $5,000 for plaintiff because it was a "good buy." Plaintiff further testifed she had not requested Watts to purchase the stock on her behalf, but she gave Watts $5,000 because she "felt obligated to reimburse him." Plaintiff did not receive the stock or a receipt for the $5,000. In April, 1972, Watts left Oregon without accounting to plaintiff for her money. During his absence Watts

telephoned plaintiff on numerous occasions and informed her he was building a boat in Phoenix, Arizona.

The exhibits received show that Watts deposited plaintiff's money in his personal account at the First National Bank of Oregon, McMinnville Branch, on February 7, 1972. He drew checks to cash on that account for $3,000 on April 6, 1972, and a check in the amount of $1,000 in favor of defendant Wagner on April 11, 1972. Watts deposited the $3,000 withdrawal to his personal account at the First National Bank of Arizona, Phoenix, Arizona, in the name of "Thomas E. Watts, Marine Account," together with other funds.

In June of 1972 Watts returned to Lincoln City, Oregon, with the Mighty Mite, a homemade orange-colored dory which he had purportedly built in two months from used tongue and groove flooring with no ribs in the hull and fastened with "16 penny nails." The Mighty Mite was described by witnesses as an "orange monstrosity," a "piece of junk," and completely "worthless." There was some testimony that the motor and outboard drive in the Mighty Mite were of value but other testimony revealed that the motor and drive were not operable and that it would cost more to remove them from the hull than any value they might have.

Plaintiff and defendant Watts took the Mighty Mite to the Delake Marina storage area. It was never placed in the water or operated. Plaintiff testified that she was not upset when defendant Watts left Neskowin because "he had said he would be returning." During her telephone conversations with Watts, plaintiff did not "query him about the stock." When Watts returned in June, plaintiff spent considerable time with him. She testified:

"A. Well, I told him I didn't think he had bought stock with the money and he had never

given me a receipt or anything, and so he said that he would have the stock sold and I would have my money in a few days. So there was nothing further to say about the boat [Mighty Mite]."

Within 10 days from the time Watts returned to Lincoln City with the Mighty Mite he disappeared for good. Sometime later Watts mailed Wagner a bill of sale to the Mighty Mite. Wagner was surprised and did not expect the bill of sale and did not want the Mighty Mite. He also did not know that Watts was leaving the community. Several people refused to take the Mighty Mite as a gift. When the manager of the Delake Marina insisted that it be removed from the parking lot, Wagner gave the Mighty Mite to a Mr. Arnold so he would move it off the lot.

The evidence establishes that defendant Watts acted fraudulently and refused to tell the truth to plaintiff or defendant Wagner.

Defendant Wagner acknowledges receiving the $1,000 check drawn on Watts' account at the First National Bank of Oregon. His testimony is that Watts wanted to form a partnership with him for fishing in order that Watts could learn to fish and Watts would help refurbish Wagner's Heidi.

"A. Well, when he [Watts] found out I had a fishing boat, he got very interested and he had done some work on another person's boat, so he decided that he would build himself—he called it his 'super dory.' And we would become partners. He had never fished before, and he wanted me with him, naturally so, to teach him how to fish, and we would run together. * * * [H]e knew I only had about a week left to work, and I was going to take a month before fishing season started to completely redo my boat, and he was going to completely redo my dory with me with hydraulic equipment, et cetera.

"Q. And this $1,000 was payment to you to do work on the dory [Heidi]?

"A. Yes, sir."

There are three so-called boats involved in this case—the Mighty Mite; the Heidi, which defendant Wagner owned; and the Inez M, which Wagner acquired after an even trade for the Heidi.

Plaintiff contends that the money she gave Watts went into the Mighty Mite; that Wagner used the Mighty Mite in the trade and obtaining of the Inez M; and that Wagner was thereby unjustly enriched and, therefore, prays that Wagner be held to hold title to the Inez M as trustee for plaintiff. The evidence does trace $3,000 of plaintiff's money into Watts' personal account at the First National Bank of Arizona where it was deposited with other funds of Watts; that part of that money was expended for boat equipment and supplies, presumably in the construction of the Mighty Mite.

██ A constructive trust must be proven by strong, clear and convincing evidence. *Evans v. Trude et al. and Champlin et al.,* 193 Or 648, 658, 240 P2d 940 (1952); *Hughes v. Helzer,* 182 Or 205, 224, 185 P2d 537 (1947). Accordingly, plaintiff has the burden to prove by such evidence that her funds went into the Inez M. *Schwartz v. Gerhardt,* 44 Or 425, 432, 75 P 698 (1904).

"* * * There is no inference that the wrongdoer's other assets include the money withdrawn or its product. The burden of proof is on the claimant to show what has become of the money withdrawn." 5 Scott, Law of Trusts 3657, § 521.3 (3d ed 1967).

The plaintiff must also prove that Wagner had notice of a breach of trust (Watts' unlawful use of plaintiff's money) and that defendant Wagner was not a bona fide purchaser for value of the Inez M.

"A third person has notice of a breach * * * when he actually knows of the breach, but also when under the circumstances he should know of the breach. It is sometimes said that in the former case he has actual notice and in the later case he has constructive notice. The term 'constructive,' however, is not a happy one, and its employment generally leads to loose thinking. It seems more accurate to say that a person has notice of a breach of trust when he has actual knowledge of the breach or when he has knowledge of such facts that he should ascertain by inquiry whether the trustee is committing a breach of trust. * * *" 4 Scott, Law of Trusts 2405, § 297 (3d ed 1967).

"If the trust property, or its substitute or product, has passed into the hands of a party who obtained the legal title to it and paid value for it, without notice of the existence of the trust and the consequent equitable interest of the beneficiary, the equitable interest is cut off and the legal title holder may retain the property free and clear of any duty toward the beneficiary." (Footnote omitted.) Bogert, Law of Trusts 600, § 165 (5th ed 1973).

■ We have carefully examined the transcript and exhibits contained in the record and find no clear and convincing evidence to establish a relationship between the orange dory, the Mighty Mite, and the Inez M. Defendant Wagner was the only witness called to testify on this issue. According to his testimony he had traded his Heidi to Mr. Arnold for the Inez M and each gave proper bill of sale for the transfer of these licensed boats. There was a separate and sometime later transaction when Wagner conveyed the Mighty Mite to Arnold in order to get it off the parking lot. Testimony, including exhibits, shows that Wagner owned the Heidi, that it was in good condition after considerable refurbishing, and that it was valued at $3,000 plus the cost of motor and hull repairs. The

Inez M, owned by Arnold, needed considerable repair work; he had tried to sell it for over a year at $4,200 or $4,500 but was unsuccessful. Wagner testified:

"Q. And that was the only consideration for the trade, is boat for boat?

"A. Right.

"Q. And then what prompted you to transfer the old orange to him?

"A. After the season ended, he was fishing the dory. I knew he was going to build a bigger boat, so I figured if he wanted that engine, it might be of some use to him, and it was wonderful if he could get rid of the boat for me, provided he would move the whole thing, not just the engine. He would have to move the whole thing off the lot, of which he did.

"* * * * *.

"Q. Did you consider the boat to be of any value to you?

"A. The orange one?

"Q. The old orange.

"A. No, it was a hassle to me. Tom Curry was calling me every other day to get rid of it, and I didn't have any money to pay him for a moorage fee there, and it was the end of the season, so—

"Q. Moorage or storage?

"A. Storage.

"Q. Was the boat ever in the water?

"A. No."

There is evidence that plaintiff talked to Wagner about Watts having left Neskowin in April of 1972, but there was no basis for Wagner to suspect that any of plaintiff's money went into the Mighty Mite or the proposed fishing venture. In fact, on the day Watts reputedly disappeared, he told Wagner he

would meet him at Wagner's boat to help him work on the vessel. Wagner testified:

"Q. Did she ever advise you that he [Watts] had purchased stock for her or was going to?

"A. No, sir.

"* * * * *.

"Q. Did she ever make request or did she ever notify you of her claim against the boat and motor?

"A. No. I—not until I got served the paper [complaint and summons].

"* * * * *.

"Q. Never before that did she ever demand an interest in that boat?

"A. No. She was over at my house a couple of times, but not for that."

Plaintiff failed to prove that Wagner had notice that Watts was acting as trustee of plaintiff's funds and that said funds went into the Mighty Mite. The evidence shows that Wagner paid value for the Inez M.

Affirmed.