Argued and submitted January 8, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings November 12, 2010

Heather TUPPER,
*Petitioner on Review,*

*v.*

Danette ROAN,
*Respondent on Review.*

Danette ROAN,
*Third-Party Plaintiff,*

*v.*

Alan Claude TUPPER,
as Personal Representative of
the Estate of Jerry Alan Tupper,
Deceased,
*Third-Party Defendant.*

(CC CV0610-0435; CA A136095; SC S057373)

243 P3d 50

Matthew Whitman, of Cartwright & Associates, Portland, argued the cause and filed the brief for petitioner on review. With him on the brief was James R. Cartwright.

Michael J. Morris, of Bennett, Hartman, Morris & Kaplan LLP, Portland, argued the cause and filed the briefs for respondent on review. With him on the briefs was Heidi K. Brown.

GILLETTE, J.

## GILLETTE, J.

This is a dispute over the proceeds of a life insurance policy. Plaintiff claimed an interest in the policy proceeds because she had been married to the decedent at one time and, when she and decedent divorced, their dissolution decree required the decedent to maintain a $100,000 life insurance policy naming her beneficiary, as trustee for a child of the marriage. The decedent had not purchased the required policy at the time the dissolution decree became final, but he later *did* purchase the policy at issue—a $600,000 life insurance policy naming defendant (not plaintiff) as the sole beneficiary. The decedent died while that policy was in force and defendant collected the proceeds. Plaintiff filed the present action against defendant, seeking imposition of a constructive trust on $100,000 of the insurance proceeds and alleging theories of unjust enrichment and "money had and received." On cross motions for summary judgment, the trial court held that $100,000 of the insurance proceeds was subject to a constructive trust. Defendant appealed, and the Court of Appeals reversed, holding that the trial court should instead have awarded summary judgment to defendant. *Tupper v. Roan*, 227 Or App 391, 206 P3d 237 (2009). We allowed plaintiff's petition for review and now hold that, for the reasons that follow, neither defendant nor plaintiff was entitled to summary judgment. Accordingly, we reverse the decision of the Court of Appeals and the judgment of the trial court, and remand the case for further proceedings.

Plaintiff and the decedent, Jerry Tupper (Tupper), divorced in 2004. The dissolution decree and judgment incorporated the parties' settlement agreement. The decree awarded custody of the couple's child to plaintiff, with visitation rights to Tupper, and required Tupper to pay an amount of child support to plaintiff. In an apparent effort to ensure that each party would have the financial means to support the child in the event of the other party's death, the decree and judgment provided:

> "(A) So long as either party has a legal obligation to support any child of the parties, each party shall maintain an insurance policy insuring his or her life in an amount of

not less than $100,000, naming the other parent as trustee on behalf of any supported child.

"(B)  The obligation to maintain this insurance shall continue so long as either party has a duty to pay child support as decreed by the court, or an arrearage exists for accrued but unpaid support.

"(C)  The following provisions relate to procedural aspects of the requirement to maintain insurance:

"(1)  During the term of the obligation to maintain insurance each party shall furnish to the other, upon request, a copy of the policy or evidence the proper life insurance is in force with the appropriate beneficiary designation in effect.

"(2)  A constructive trust shall be imposed over the proceeds of any insurance owned by either party at the time of either party's death if either party fails to maintain insurance in said amount, or if said insurance is in force but another beneficiary is designated to receive said funds. The trustee shall make distribution as described herein."

Although the life insurance obligation was expressed in terms of "maintaining" rather than "purchasing" the described policy, it appears that Tupper did not own life insurance of any kind at the time of the dissolution. Neither did Tupper purchase life insurance immediately thereafter.

Tupper did obtain life insurance in February 2006, some two years after the dissolution. At that time, he purchased the policy that is at issue in this case—a $600,000 United of Omaha policy naming defendant, who was Tupper's girlfriend, as the sole beneficiary. At the time of that insurance purchase, Tupper and defendant were living together and had started a business that generated only enough income to pay Tupper. According to defendant, the policy was entirely her idea and was obtained through her efforts "as security for my funds advanced [to the business] and my dependency and loss of compensation during our relationship." Tupper, however, was listed as the owner of the policy and the premiums were debited from his personal bank account.

A few months after Tupper purchased the policy, he died in an accident, and United of Omaha distributed the policy proceeds in a lump sum to defendant. When it became apparent that Tupper had no other life insurance and, thus, had died in breach of the insurance requirement in the dissolution decree, plaintiff filed the present action against defendant. In her complaint, plaintiff alleged that (1) Tupper had been party to a dissolution judgment that required him to maintain a $100,000 life insurance policy naming plaintiff as beneficiary (as trustee for the child); (2) the dissolution judgment provided for imposition of a constructive trust on any life insurance policy that Tupper owned when he died, if he died in breach of the life insurance requirement; (3) Tupper had died in breach of that requirement; (4) when he died, Tupper owned a $600,000 life insurance policy that named defendant as the beneficiary; and (5) defendant was aware of Tupper's insurance obligations to plaintiff at the time that the policy was purchased. Plaintiff sought to collect $100,000 from defendant, either by imposing a constructive trust on defendant's insurance proceeds to prevent "unjust enrichment" or as damages payable on a claim for "money had and received."

In her answer to plaintiff's complaint, defendant specifically denied that she had any previous knowledge of Tupper's obligation under the dissolution decree. Defendant also asserted a number of affirmative defenses, including an allegation that Tupper's estate, and not she, was responsible for any liability arising from Tupper's breach of his obligation under the decree.[1]

Plaintiff moved for summary judgment, arguing that there was no issue of material fact with respect to the terms in the divorce decree, Tupper's breach, Tupper's ownership of United of Omaha policy, or the constructive trust remedy that the divorce decree provided. Plaintiff acknowledged that, in two cases that involved similar facts,[2] the

---

[1] Consistent with that theory, defendant asserted a third-party complaint against the personal representative of Tupper's estate, claiming reimbursement for any amounts plaintiff might recover out of the insurance proceeds.

[2] The cases are *Oregon Pacific State Ins. Co. v. Jackson*, 162 Or App 654, 986 P2d 650 (1999), and *McDonald v. McDonald*, 57 Or App 6, 643 P2d 1280 (1982).

Court of Appeals had decided against imposing constructive trusts on the proceeds of the life insurance policies at issue. She argued, however, that those cases were distinguishable because the dissolution decrees in those cases had not specified that a constructive trust would be imposed on *any* life insurance policy that the relevant party owned. She claimed that, in her own dissolution decree, the inclusion of a term specifying that remedy gave her an immediate equitable interest in the proceeds of "any" life insurance that Tupper might purchase. She claimed, moreover, that that equitable interest was superior to any attempt on Tupper's part to designate a different beneficiary.

Plaintiff submitted a number of affidavits in support of her motion for summary judgment: (1) her own declaration stating that, in a conversation with defendant that occurred shortly after Tupper died, defendant had acknowledged that she knew about Tupper's life insurance obligation and had told her that Tupper's children[3] would be "taken care of"; (2) Tupper's father's declaration stating that, in a conversation between defendant, himself, his wife, and several others that occurred shortly after Tupper's death, defendant had stated that Tupper had wanted $100,000 of the proceeds of the life insurance to go to each of his children; and (3) Tupper's stepmother's declaration, reporting the same conversation.

Defendant opposed plaintiff's motion for summary judgment, arguing that plaintiff was required, and failed, to show that defendant had had notice of Tupper's obligation when the United of Omaha policy was purchased. Defendant also argued that, because she was not a party to the divorce decree, she could not be bound by its terms, including the term that provided for imposition of a constructive trust on any life insurance policy owned by Tupper if he died in breach of the life insurance requirement.

Defendant also moved for summary judgment. She argued that, to succeed on either of her claims, plaintiff must show that she had some legally protected right or interest in

---

[3] Tupper had another child by a previous wife.

the policy in question. Defendant argued that, because plaintiff had never been named as a beneficiary of the $600,000 United of Omaha policy (and, in fact, the policy had not existed at the time of plaintiff's divorce from Tupper), plaintiff could not make the required showing.

After a hearing, the trial court denied defendant's motion for summary judgment, granted plaintiff's cross-motion with respect to the claim for unjust enrichment, and imposed a constructive trust in plaintiff's favor on $100,000 of the $600,000 that defendant had received from the policy.[4]

As noted, defendant appealed from the trial court's judgment, and the Court of Appeals reversed. The court examined three cases that involved similar attempts by a former spouse to impose a constructive trust on the proceeds of a decedent's life insurance policy after the decedent had died in breach of a legal obligation to maintain life insurance naming the former spouse as beneficiary. Based on those cases, the court concluded that, to prevail on an unjust enrichment theory against the person who had been named as the decedent's beneficiary, a plaintiff must prove both (1) that, by designating another person as his or her beneficiary, the decedent essentially gave that person property that previously had belonged to the plaintiff; and (2) that the person named as beneficiary either knew or should have known of the wrongfulness of the decedent's action. *Tupper*, 227 Or App at 400-03. Observing that, in the present case, there was evidence both for and against the latter requirement, the court concluded that plaintiff was not entitled to summary judgment on her unjust enrichment claim. *Id.* at 402-03. The court further concluded that *defendant* was entitled to summary judgment on that claim, because plaintiff had not and could not produce evidence that would satisfy the first requirement, *i.e.*, that plaintiff previously had had an interest in the policy in question. *Id.* at 406. The court added that, for essentially the same reason, defendant was entitled to summary judgment on plaintiff's "money had and received" claim. *Id.* We allowed plaintiff's petition for review

---

[4] The trial court concluded that, in light of its resolution of the unjust enrichment claim, plaintiff's claim for money had and received was moot.

to consider whether and how the equitable concepts of unjust enrichment and constructive trust apply in this context.

■     We begin with plaintiff's unjust enrichment claim, under which she seeks to impose a constructive trust on $100,000 of the proceeds of decedent's United of Omaha policy. She advances two theories for imposition of that remedy. Her first theory is couched in the law of contracts: It focuses on the simple fact that, in the context of the decedent's dissolution agreement with plaintiff, the decedent *stipulated* to imposition of a constructive trust in the event of decedent's breach of the life insurance term. In plaintiff's view, that stipulated remedy is as binding as any other contract term would be and, to establish her right to that remedy, she need only prove the elements set out in the stipulation—that the decedent owned the policy in question at the time of his death and that he died in breach of his obligation to maintain life insurance in the required amount naming plaintiff as beneficiary and trustee. Plaintiff reasons that dissolution judgments are to be enforced as contracts, ORS 107.104(2)(a),[5] and that this court has been amenable to enforcing equitable remedies to which the parties to a contract have agreed, even when the remedy is one that otherwise would not be available.[6]

Plaintiff points out, moreover, that it is the announced public policy of this state that courts "enforce the terms of settlements [of suits for marital * * * dissolution] to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy." ORS

---

[5] ORS 107.104(2)(a) provides:

"In a suit for marital * * * dissolution * * *, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a) As contract terms using contract remedies."

[6] Plaintiff cites *Cash Flow Investors, Inc. v. Union Oil Co.*, 318 Or 88, 91, 862 P2d 501 (1993) (in contract dispute, court may impose attorney fees as provided in contract); *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984), *overruled on other grounds by Ditommaso Realty, Inc. v. Moak Motorcycles, Inc.*, 309 Or 190, 785 P2d 343 (1990) (contracting parties may agree on liquidated damages where damages would be difficult or impossible to accurately estimate); *Eldridge et al. v. Johnston*, 195 Or 379, 407-08, 245 P2d 239 (1952) (contracts in restraint of trade, providing for injunction against working in certain field, are enforceable if limited, reasonable, and supported by consideration).

107.104(1)(b). Plaintiff argues that, far from contravening public policy, the settlement term at issue here—requiring an ex-spouse to obtain life insurance for the benefit of his child and stipulating to a constructive trust remedy for breach of that term—is one that the legislature particularly favors. As evidence of that fact, plaintiff points to ORS 107.810, which provides:

> "It is the policy of the State of Oregon to encourage persons obligated to support other persons as the result of a dissolution * * * of marriage * * * to obtain or cooperate in the obtaining of life insurance adequate to provide for the continued support of those persons in the event of the obligor's death."

But, in making all of those statutory policy arguments, plaintiff misses an essential point: The person against whom she is proceeding is a stranger to the dissolution decree and the stipulation of remedy. However much the legislature may favor a policy of holding the parties to dissolution agreements to the terms of their agreements, that legislative policy does not serve as dispositive authority for imposing the same terms on a person who is *not* a party to the agreement.

Plaintiff argues that, in any event, she is entitled to the same constructive trust remedy under Oregon's common law of constructive trusts and unjust enrichment. We begin our discussion of plaintiff's theory by briefly summarizing the common-law principles of unjust enrichment and constructive trust.

■■ It is important to understand, first, that the concept of constructive trust does not stand on its own as a substantive claim, but exists solely as an equitable *remedy*, available to divest an individual who has been unjustly enriched of property that he or she "ought not, in equity and good conscience, hold and enjoy." *Marston v. Myers et ux*, 217 Or 498, 509, 342 P2d 1111 (1959). The concepts of constructive trust and unjust enrichment thus are intertwined: When "the law employs a constructive trust, the doctrine of unjust enrichment governs generally the substantive rights of the parties." *Barnes v. Eastern and Western Lbr. Co.*, 205 Or 553, 597, 287 P2d 929 (1955). *See also Belton v. Buesing*, 240 Or 399, 409,

402 P2d 98 (1965) (constructive trust is "a remedial institution invented by equity to avoid unjust enrichment in situations where there is no other available equitable remedy").

■        Although our cases refer to a substantive "doctrine" of unjust enrichment, none provide any really comprehensive exposition of that doctrine. Instead, the cases simply describe the kinds of actions and circumstances that would constitute unjust enrichment warranting imposition of a constructive trust, and then observe that the concept extends to other similar acts and circumstances. Thus, in *Suitter v. Thompson et ux*, 225 Or 614, 625, 358 P2d 267 (1961), the court stated that equity may impress a constructive trust on property

> " 'obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, *or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest.*' "

(quoting John Norton Pomeroy, 4 *A Treatise on Equity Jurisprudence* § 1053, 119 (5th ed 1941)) (emphasis added).

We recognize that the foregoing precedents concern inequitable conduct of a recipient of property, and not conduct by a grantor or donor. However, other cases have added to the list of circumstances that might support a claim for unjust enrichment. In *Albino v. Albino*, 279 Or 537, 568 P2d 1344 (1977), for example, this court held that a constructive trust is warranted, even in the absence of the more active sorts of wrongful behavior identified in *Suitter*, when a person in a fiduciary or confidential relationship acquires or retains property in violation of a duty impressed upon him by that relationship. 279 Or at 550; *see also Pantano v. Obbiso*, 283 Or 83, 86, 580 P2d 1026 (1978) (to the same effect). And in *Scoggins v. State Construction*, 259 Or 371, 376, 485 P2d 391 (1971), we suggested that even a "mistake" might result in unjust enrichment justifying imposition of a constructive trust. Among all of those examples, however, the common thread is the acquisition or retention of property in a way that is in some sense wrongful or, as Pomeroy would have it, "unconscientious."

An examination of this court's unjust enrichment cases demonstrates another relevant common-law precept—that the constructive trust remedy is not limited to property that remains in the hands of the party who was directly involved in the wrongful divestment or retention. In *Newton v. Pickell et al.*, 201 Or 225, 232-33, 269 P2d 508 (1954), for example, this court imposed a constructive trust on a residential property conveyed as a gift to the defendant by his father, when the father had entered into a prenuptial agreement promising to convey an undivided half-interest in the property to his then-prospective wife. The court explained that, by virtue of the prenuptial agreement, the property had been impressed with a constructive trust in the prospective wife's favor, which the father had violated when he wrongfully transferred the property to his son. The court then went on to explain that

" '[w]herever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, * * * devolves from [the] trustee to a third person, who is a mere volunteer * * *, or who is a purchaser with actual or constructive notice of the trust * * *, then the rule is universal that such heir, devisee, successor, or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. * * * It is not necessary that such transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation; it is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a *bona fide* purchaser for a valuable consideration and without notice.' "

*Id.* (quoting Pomeroy, 4 *Equity Jurisprudence* § 1048 at 102).[7] *See also Suitter*, 225 Or at 625 (when property has been obtained under "unconscientious" circumstances, "a court of

---

[7] Conversely, we have stated that,

" '[i]f the trust property, or its substitute or product, has passed into the hands of a party who obtained the legal title to it and paid value for it, without notice of the existence of the trust and the consequent equitable interest of the beneficiary, the equitable interest is *cut off* and the legal title holder may retain the property free and clear of any duty toward the beneficiary.' "

*Clearwater v. Wagner*, 272 Or 491, 496, 537 P2d 532 (1975) (quoting George C. Bogert, *The Law of Trust* § 165, 600 (5th ed 1973)).

equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the [constructive] trust"). Thus, when a person possesses property that, in equity and good conscience belongs to another, the fact that that person is innocent of any affirmative wrongdoing with respect to the property will not, standing alone, prevent the equitable owner from obtaining a constructive trust.

■ ■ A final relevant common-law principle associated with the rule, and often recited in this court's cases, is that a constructive trust "must be proved by strong, clear and convincing evidence." *See, e.g., Albino*, 279 Or at 550; *Clearwater v. Wagner*, 272 Or 491, 495, 537 P2d 532 (1975); *Hughes v. Helzer*, 182 Or 205, 224, 185 P2d 537 (1947) (all to that effect). Generally, this court has employed that rule as a shorthand for the proposition that a constructive trust can attach only to items and money that the evidence clearly identifies as rightfully "belonging" to the plaintiff, or to the identifiable products of, or substitutes for, those items and money. Thus, in *Clearwater*, the court declined to impose a constructive trust on a defendant's boat, which the defendant had obtained after a third party, who had defrauded the plaintiff of $5,000, had conveyed $1,000 to the defendant in an unrelated transaction. Plaintiff asserted that the boat had been paid for with money that in equity and good conscience belonged to her. But, after noting that there was no "inference" of identity between the fraudulently obtained funds and the wrongdoer's other assets, this court concluded that plaintiff had failed to carry her burden of proving "by strong, clear and convincing evidence" that her money had gone into the purchase of the boat. *Id.* at 495-96. Similarly, in *Pantano*, this court considered a plaintiff's bid to impose a constructive trust on funds from a savings account that his deceased wife had owned jointly with her sister, on the theory that, over the years, the wife had secretly and wrongfully taken money from him to fund the account. After citing the "strong, clear and convincing evidence" standard, the court rejected the plaintiff's claim on the ground that the plaintiff could not show "by even a preponderance of the evidence standard that

any specific or definite amount of his money was deposited by [his wife] into the sisters' joint accounts." 283 Or at 87.

■　From the foregoing discussion, we can identify the following elements that a plaintiff must prove in order to prevail on an unjust enrichment claim in circumstances like those presented here. First, the plaintiff must show that property or a property interest that rightfully belongs to her was taken or obtained by someone else under circumstances that in some sense were wrongful or inequitable. Next, the plaintiff must show that the person who now possesses the property is not a bona fide purchaser for value and without notice. Finally, the plaintiff must establish, with "strong, clear and convincing evidence," that the property in the hands of that person, *i.e.*, the property upon which she seeks to impose a constructive trust, in fact is the very property that rightfully belongs to her, or is a product of or substitute for that property. With those general principles in mind, we turn to consider whether and how they apply when a decedent's ex-wife, whom the decedent was under an obligation to name as his life insurance beneficiary, attempts to acquire insurance proceeds that are in the hands of a person whom the deceased instead named as his beneficiary.

■　We begin with the question whether circumstances like those just described can satisfy the element of wrongfulness that a claim for unjust enrichment requires. As discussed, our unjust enrichment cases speak of a range of circumstances that could be deemed wrongful, including mistake, fraud, coercion, undue influence, duress, taking advantage of weakness, and violation of a duty imposed by a confidential or fiduciary relationship. *Albino*, 279 Or at 550; *Scoggins*, 259 Or at 376; *Suitter*, 225 Or at 625. In general, it would seem that a decedent's breach of a predissolution agreement and court order to name his ex-spouse as a beneficiary of a life insurance policy for the benefit of a child whom the decedent had an obligation to support would fall within the required range. In general, then, we can say that, in these sorts of circumstances, the decedent's conduct has deprived his or her child of *something* (the nature of which we have yet to discuss), under circumstances that are wrongful or inequitable.

But what is the status of the person who actually is named as the beneficiary, who receives and retains the insurance proceeds upon which the ex-spouse seeks to impose a constructive trust? If that person is innocent of any wrongdoing with respect to the decedent's breach of his obligation under the dissolution decree, is it wrongful or inequitable for her to *retain* those proceeds? The cases we have discussed above, 349 Or at 221-23, suggest that retention of insurance proceeds in such circumstances may be deemed wrongful and that a disappointed ex-spouse may reach the proceeds in such person's hands.

Thus far there is no serious incompatibility between the concepts of unjust enrichment and constructive trust, on the one hand, and the circumstances of the present case on the other. But a complication *does* arise when we consider whether a term in a dissolution decree that obliges a party to that decree to maintain life insurance naming the party's ex-spouse as beneficiary can be considered *property* for purposes of the concepts of unjust enrichment and constructive trust. Moreover, there is the necessity, discussed above, of showing that the property upon which a constructive trust is to be imposed is the same property that was wrongfully taken, or a direct substitute for or product of that property. 349 Or at 222-23. And there is one further complication: The answer to whether an agreement to maintain life insurance naming an ex-spouse as a beneficiary confers "property" on the ex-spouse may depend on whether it appears that the parties had a particular policy or policies in mind.

We attack the problem, first, by considering the simplest case—a bargained-for obligation to maintain a *specified existing* policy that names the ex-spouse as beneficiary. Courts in other jurisdictions have almost uniformly held that such an obligation confers on the ex-spouse a vested, equitable property interest in the insurance policy and its proceeds that is superior to the mere legal right of a subsequently named beneficiary. *See, e.g., Williams v. Williams*, 276 Ala 43, 158 So 2d 901 (1963); *Carpenter v. Carpenter*, 150 Ariz 130, 722 P2d 298 (1985); *Handrahan v. Moore*, 332 Mass 300, 124 NE2d 808 (1955); *Bailey v. Prudential Ins. Co. of America*, 124 Ohio App 3d 31, 705 NE2d 389 (1997) (all to that effect). *See also* Lee R. Russ, 4 *Couch on Insurance* 3d §§ 64:24 - 64:26, 64-50 - 64-59 (3d ed 2005) (describing effect

of divorce decree requiring party to maintain existing life insurance for the benefit of the other spouse or of children of the marriage). Generally, those courts have reasoned that such an agreement destroys the right of the obligated party to designate a different beneficiary, thereby creating an equitable property interest in the policy in the other party. We agree with that reasoning, and with the resulting conclusion that, when a dissolution agreement requires a party to maintain a specified, existing life insurance policy naming his or her ex-spouse as the beneficiary, the ex-spouse thereby obtains an equitable property interest in the policy and its proceeds that is superior to the legal right of any subsequently designated beneficiary who is not a bona fide purchaser for value without notice.

On the other hand, there are cases in which a dissolution agreement does not refer to any particular policy but, instead, contains a simple promise to obtain *some* policy in a specified amount that names the ex-spouse as beneficiary. In some of those cases, courts have concluded that the ex-spouse does *not* obtain an equitable property interest in an insurance policy naming a different beneficiary that the obligated party later obtained. *See, e.g., Larson v. Larson*, 226 Ga 209, 173 SE2d 700 (1970); *Foster v. Hurley*, 444 Mass 157, 826 NE2d 719 (2005); *Parge v. Parge*, 159 Wis 2d 175, 464 NW2d 217 (1990) (all to that effect). *But see Holt v. Holt*, 995 SW2d 68, 77 (Tenn 1999) (imposing constructive trust on proceeds of later-obtained insurance policy naming different beneficiary than required under dissolution agreement); *Jones v. Harrison*, 250 Va 64, 70, 458 SE2d 766 (1995) (same). The reasoning behind that conclusion is simple: Because people ordinarily are free to purchase as many life insurance policies as they choose, naming different beneficiaries on each one, there is no necessary connection between a person's promise to obtain insurance naming an ex-spouse as the beneficiary with his or her subsequent purchase of a particular policy that names an entirely different person as the beneficiary. We understand that reasoning, but need not decide whether, if presented with a case involving only those facts, we would adopt it.

We reserve that issue because there are circumstances that fall between those two scenarios—where, in spite of the absence of any reference to a particular *existing*

insurance policy, the dissolution agreement nevertheless draws a clear connection between the obligated party's promise to purchase an insurance policy naming the ex-spouse as beneficiary and one or more subsequently obtained policies naming different beneficiaries. In our view, as a matter of logic, the fact that the policy at issue did not exist at the time of the dissolution agreement is of little significance if the dissolution agreement is able in some other way to establish an intent to bind the obligated party *with respect to one or more identifiable subsequently obtained policies.* It follows that an obligation to obtain an insurance policy naming an ex-spouse as beneficiary may confer an equitable interest in a later-acquired policy, if the obligation in some fashion clearly identifies that policy as one of its objects.

We turn to the question whether the record on summary judgment establishes that element as a matter of law, *i.e.*, whether the obligation to obtain insurance naming the ex-spouse as beneficiary is stated in terms that clearly identify the policy at issue as an object of the obligation, so that the ex-spouse may be deemed to have an equitable property interest in that policy. The only relevant evidence in the record with respect to that element is the wording of the life insurance term in the dissolution decree.

There are two parts of the provision that are pertinent. First, there is the broad initial statement that the decedent is obligated to

> "maintain *an* insurance policy insuring his * * * life in an amount of not less than $100,000, naming [plaintiff] as trustee on behalf of [plaintiff's and Tupper's] child."

(Emphasis added.) The second part of the provision that is relevant states:

> "A constructive trust shall be imposed over the proceeds of *any* insurance owned by either party at the time of either party's death if either party fails to maintain insurance in said amount, or if said insurance is in force but another beneficiary is designated to receive said funds."

(Emphasis added.)

In our view, the wording of the first statement by itself does not, as a matter of law, confer on plaintiff any equitable interest in the policy at issue. The statement does not point to any *specific* policy, whether existing at the time of the dissolution agreement or otherwise. Rather, it refers, generically, to "an" insurance policy. Neither does the first statement in any way "destroy" or limit Tupper's right to purchase insurance policies naming other persons as beneficiaries.

But the second statement is a different matter. That statement expressly contemplates a failure on Tupper's part to carry out the obligation to maintain an insurance policy as described and, where such a failure has occurred, purports to impose a constructive trust on "any" insurance policy owned by Tupper at the time of his death. The insurance obligation thus is stated in terms that clearly identify "any" insurance policy owned by Tupper at the time of death—*including the $600,000 United of Omaha policy*—as its objects. We conclude that, as a matter of law, the life insurance provision vests in plaintiff an equitable interest in the policy at issue.

We turn now to the other element of her claim that plaintiff asserted and that the cases generally require her to prove—*viz.*, that defendant (the decedent's named beneficiary) did not give valuable consideration for being so named and had notice of the decedent's obligation to name the plaintiff as beneficiary. With respect to those considerations, the evidence is mixed. Plaintiff presented three affidavits—her own and those of Tupper's mother and father—that averred that defendant had made statements showing that she had prior notice of Tupper's obligation under the dissolution decree. But, in her own affidavit, defendant denied having had prior notice.[8] Defendant's affidavit also is directed at proving that she paid valuable consideration for her status as Tupper's beneficiary—she suggests that the purchase of an insurance policy naming her as beneficiary was, in some

---

[8] We refer here only to the record as it exists on the parties' cross motions for summary judgment. We express no view on the question whether, under other facts, *constructive* notice to a defendant might be sufficient to defeat defendant's claim of entitlement to the policy proceeds. *But see Suitter,* 225 Or at 625 (quoting Pomeroy and suggesting constructive notice would be sufficient).

sense, a repayment for her contribution of funds for the purchase of the home that she and Tupper shared and for her unpaid work for the business that she and Tupper had started together. Although that evidence might not be sufficient to establish for an ultimate trier of fact that defendant paid valuable consideration to Tupper to be named as his beneficiary, we cannot say that it is insufficient as a matter of law to create a factual question respecting the issue. On the summary judgment record as a whole, therefore, defendant's status as a bona fide purchaser without notice remains an issue of fact.

From the foregoing discussion, we conclude that neither party was entitled to summary judgment with respect to plaintiff's unjust enrichment claim. It follows that the trial court erred in granting plaintiff's motion for summary judgment and that the Court of Appeals erred in remanding for entry of summary judgment in favor of defendant.

That leaves us to consider plaintiff's claim for money had and received. As noted, the trial court declared that claim to be moot after it granted summary judgment on plaintiff's unjust enrichment claim and imposed the constructive trust that she had requested. On defendant's appeal, the Court of Appeals rejected plaintiff's suggestion that she was entitled to summary judgment on her money had and received claim, and that the imposition of the constructive trust remedy should be affirmed on that alternate theory. Relying on a definition set out in *Powell et al. v. Sheets et al.*, 196 Or 682, 251 P2d 108 (1952), the Court of Appeals announced that an action for money had and received may be maintained " 'whenever one has money in his hands belonging to another, which, in equity and good conscience, he ought to pay over to that other.' " 227 Or App at 406 (quoting *Powell*, 196 Or at 700). It then explained that, for the same reasons set out in its discussion of plaintiff's unjust enrichment claim, plaintiff did not and could not establish that she ever had had a property interest in the insurance policy and proceeds that were the object of her claim.

We have rejected the Court of Appeals' conclusion that plaintiff had not and could not show that she had a property interest in the proceeds of the United of Omaha insurance policy (in fact, we have concluded that, to the contrary, the dissolution decree conferred on plaintiff an equitable property interest in that policy as a matter of law). It follows that the Court of Appeals' reasoning with respect to plaintiff's money had and received claim rested on an incorrect premise. In the absence of any other well-developed argument with respect to plaintiff's money had and received claim, we conclude that defendant was not entitled to summary judgment on that claim and that the Court of Appeals erred in directing the trial court to grant defendant's motion. And, because we have rejected the trial court's resolution of plaintiff's unjust enrichment claim, we also must reject that court's conclusion that its resolution of that claim rendered moot plaintiff's claim for money had and received. We so hold. If she elects to do so, plaintiff is entitled to have her money had and received claim tried along with the unjust enrichment claim.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.