Argued and submitted December 17, 2015, vacated and remanded as to unjust
enrichment claim; otherwise affirmed May 3, 2017

Laurie CUMMING,
*Plaintiff-Appellant,*

*v.*

Laurie NIPPING
and Kent Nipping,
*Defendants-Respondents.*

Lane County Circuit Court
161224954; A157419

395 P3d 928

James R. Cartwright argued the cause and filed the
briefs for appellant.

Brian J. Millington argued the cause for respondents.
With him on the brief was Thorp, Purdy, Jewett, Urness &
Wilkinson, P. C.

Before Ortega, Presiding Judge, and Lagesen, Judge,
and Garrett, Judge.

## ORTEGA, P. J.

This case arises from a family dispute over a condominium in California, which we refer to as Seagate. Plaintiff understood that, after the deaths of her father and stepmother, Seagate would pass to her unencumbered, by operation of a family trust. Although plaintiff eventually acquired ownership of Seagate, it was by then encumbered by a deed of trust. For reasons that we explain below, plaintiff filed a complaint against defendants that included an unjust enrichment claim to recover the equity lost by the encumbrance. After a bench trial, the trial court denied that claim. Having reviewed the record, it appears that the trial court applied an incorrect legal standard in deciding the unjust enrichment claim. Accordingly, because the application of the correct legal standard would require the court to make factual findings and legal determinations that it appears not to have already made, we vacate the judgment as to the unjust enrichment claim and remand for further proceedings, but otherwise affirm.

We recount facts that are generally undisputed and necessary to our limited disposition. Seagate was originally purchased by plaintiff's parents as their primary residence. Plaintiff is their only child. Plaintiff's mother passed away in the early 1970s and, shortly thereafter, her father married stepmother, who had three children from a prior marriage. Defendant Laurie Nipping is stepmother's granddaughter; defendant Kent Nipping is Laurie's husband.

Plaintiff's father and stepmother lived at Seagate for the duration of their marriage. Seagate was held in a family trust, of which plaintiff's father and stepmother were trustees. The trust was, at some point, subdivided into Trust A (survivor's trust) and Trust B (decedent's trust). After father's death in 1999, stepmother, as trustee, allocated Seagate specifically to Trust B, which, the parties agree, then became irrevocable.[1] Plaintiff was the sole trust beneficiary. In 2002, stepmother changed the trust beneficiaries to plaintiff and plaintiff's three children.[2] Ultimately,

___

[1] We refer to Trust B as "the trust" in the remainder of this opinion.

[2] The record indicates that plaintiff's children later transferred their interest in Seagate to her via a nonjudicial settlement agreement. We express no

plaintiff understood that Seagate would pass to her upon her stepmother's death.

After plaintiff's father died, she and her stepmother had no further contact. Stepmother continued to live at Seagate until about 2008, when she moved to Oregon to be nearer to defendants. While in Oregon, stepmother lived in assisted living facilities and rented out Seagate. However, in 2010, during a discussion about stepmother moving in with them, defendants raised the possibility of purchasing a new home with stepmother. Defendants found the Kropf property (Kropf) and suggested that they purchase it together with stepmother. The property, a large farm house, required a cash purchase, as its condition precluded conventional financing. Stepmother took out a loan against Seagate for $300,000, which corresponded with the Kropf purchase price. To obtain that loan, it appears that stepmother transferred Seagate out of the trust and placed it in her name and then transferred the property back into the trust after she had borrowed against it. Once purchased, stepmother and defendants each had a one-half interest in Kropf. Defendants intended to be responsible for the renovation of the house and indeed contributed labor and funds to restore the property. Stepmother passed away after her first night in the house.

After stepmother's death, defendants became the sole owners of Kropf. When plaintiff learned of stepmother's passing, she transferred title of Seagate to herself by means that are unclear from the record. Plaintiff later learned that Seagate was encumbered by a deed of trust and that Seagate was about to go into foreclosure due to about a year's worth of unpaid mortgage payments.

After learning about the encumbrance on Seagate, plaintiff filed, in relevant part, a claim against defendants for unjust enrichment, raising two alternative theories. The first theory was that defendants had wrongfully or inequitably received an interest in Kropf by influencing stepmother to execute transactions "while knowing that she lacked the capacity to enter into significant financial or real estate

---

opinion on the validity of that transfer. However, for the purposes of this appeal, we assume that plaintiff was the sole beneficiary.

transactions." Plaintiff's second theory was that defendants had wrongfully or inequitably received an interest in Kropf because stepmother, as trustee, "lacked the authority under [the trust] to engage in those transactions, and in fact was expressly prohibited by the terms [of the trust] from taking any such actions or having any such power." Plaintiff further alleged that, if defendants were allowed to retain their interest in Kropf without paying off the promissory note underlying the deed of trust on Seagate, including any amounts that plaintiff paid on that note, then defendants would be unjustly enriched at plaintiff's expense. Plaintiff sought a money award "in the amount of the remaining balance owed on the promissory note underlying the deed of trust, and all amounts [plaintiff] * * * paid on the promissory note," plus interest. Alternatively, plaintiff sought the imposition of a constructive trust on "any and all assets received by [defendants] derived from the creation of the $300,000 deed of trust," *i.e.*, Kropf.

The trial court denied plaintiff's claim. Although it did not issue written findings, it stated the following on the record:

"As to the second claim of relief, the unjust enrichment, I do not find that it is inequitable or that it shocks the [conscience] that the * * * defendant would retain the home. The way the trust was set up, if—if the other party had not just died first, and [stepmother] had, he could have done the same thing.

"And in this case, if [stepmother] had not died when she did, if she had continued to live another ten years, I don't think there would have been an issue whatsoever. And so I don't find that there was anything—there is anything inequitable about allowing the defendants to retain what they have.

"I find that as far as what the plaintiffs have an equitable interest in, in the situation, that the plaintiffs have—or the plaintiff has an equitable interest [is] exactly what she received, which is the condominium that still has value.

"I think that *Tupper* [*v. Roan*, 349 Or 211, 243 P3d 50 (2010),] is distinguishable in this situation, specifically in that in *Tupper* * * * the former wife—there was some implication, and there was some implication by family or

domestic relations case law, that she contributed to the marriage during her time that she was in the marriage, and that she was entitled to that life insurance.

"In this situation, there's no testimony whatsoever that plaintiff[] contributed anything to [Seagate]. It was in the trustee's or the trustor's total control over what they could or—what they would or would not do with it subject to the revocable trust, and they made their decisions."

On appeal, abandoning the undue influence theory, plaintiff challenges the court's determination regarding the unjust enrichment claim, asserting the theory that defendants were unjustly enriched because stepmother was not allowed to encumber Seagate under the terms of the trust. Specifically, plaintiff contends that, under the trust terms, stepmother "could invade its principal if and only if her income was insufficient to meet her needs for 'health, maintenance, support and education'"—the standard contemplated in the tax code. Plaintiff acknowledges that stepmother had some latitude as to what she could do with Seagate, including investing with it or changing its beneficiaries. However, she maintains that stepmother was not permitted to withdraw Seagate from the trust altogether or to simply gift it to someone else. Under the circumstances presented here, plaintiff contends that any loan proceeds that stepmother obtained by borrowing against Seagate should have remained the property of the trust, including whatever property she invested in using the proceeds. That is, plaintiff argues that stepmother was permitted to take equity out of Seagate to purchase Kropf, but only as long as the title to Kropf remained in the trust. Plaintiff characterizes stepmother's action in encumbering Seagate as a breach of fiduciary duty to her, the named beneficiary of the trust. Ultimately, plaintiff argues that she was entitled to prevail on her unjust enrichment claim and that either a money award or a constructive trust was justified in order to correct the unjust enrichment of defendants.

Defendants, for their part, contend that the court properly denied plaintiff's claim for unjust enrichment, raising five primary arguments. *First*, defendants contend that the proceeds obtained from Seagate were conferred to stepmother and not to defendants directly, such that any benefit

defendants received was incidental. *Second*, they argue that plaintiff did not have a vested interest in the proceeds taken from Seagate and that, as it happened, stepmother had not intended for plaintiff to receive those proceeds. *Third*, defendants argue that plaintiff failed to establish that they were not *bona fide* purchasers for value without notice. That is, defendants contend that plaintiff "failed to prove that [defendants] did not give valuable consideration for [stepmother's] contribution toward the purchase of the jointly owned [Kropf] home and that [defendants] had notice of any obligation of [stepmother] to the plaintiff with respect to the loan proceeds." *Fourth*, defendants argue that, even if they were not *bona fide* purchasers for value without notice, it would not be unjust to allow defendants to keep the Kropf property, in part, because they were motivated by a "just" purpose: they wanted stepmother to move in and live with them. *Fifth*, defendants argue that, even if plaintiff met all of the requirements of unjust enrichment, she is not entitled to equitable relief because she came to court with unclean hands with regard to the procedures by which plaintiff transferred title of Seagate to herself after stepmother's passing.

Turning to our review of this case, we note that, although Oregon has adopted the doctrine of unjust enrichment through common law, there has been little clarity regarding its application. *See Tupper*, 349 Or at 220 ("Although our cases refer to a substantive 'doctrine' of unjust enrichment, none provide any really comprehensive exposition of that doctrine."); *Grimstad v. Knudsen*, 283 Or App 28, 42-43, 386 P3d 649 (2016), *rev den*, 361 Or 350 (2017) (addressing the different tests applied in our case law). Indeed, below and on appeal, the parties relied on two different standards when framing their arguments, at times conflating the two. Thus, to determine whether the court erred in denying plaintiff's claim for unjust enrichment, as plaintiff contends, we first clarify the applicable legal standard.

We have previously stated that, in order to prevail on an unjust enrichment claim, a plaintiff "must establish that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit;

and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it." *Winters v. County of Clatsop*, 210 Or App 417, 421, 150 P3d 1104 (2007); *see also Cron v. Zimmer*, 255 Or App 114, 296 P3d 567 (2013) (identifying the same standard). However, as the authors of the *Restatement (Third) of Restitution and Unjust Enrichment* have noted, that test—or any variation of it—is not always appropriate because it can "lend a specious precision to an analysis that may be simple or complicated but which at any rate is not susceptible of [that] form of statement." *Restatement (Third) of Restitution and Unjust Enrichment* § 1 comment d (2011). Rather, the *Restatement* suggests that the true focus of the inquiry lies in the third element—that is, to prevail on an unjust enrichment claim, a plaintiff need only establish that, under the circumstances, it would be unjust for the defendant to retain the benefit conferred. *See id.* We made that same observation in *Grimstad*. In that case, we observed that the overarching principle of an unjust enrichment claim is to redress the "acquisition or retention of property under circumstances where injustice would result if the defendant was not forced to return the property to the plaintiff." 283 Or App at 44 (internal quotation marks omitted). Nevertheless, the basis of that injustice must be rooted in recognized legal principles and not in abstract notions of morality. *See Restatement* § 1 comment b ("[I]nstances of unjustified enrichment are both predictable and objectively determined, because the justification in question is not moral but legal."); *cf. Grimstad*, 283 Or App at 47 ("To prove their claim, plaintiffs had to show more than abstract unfairness from defendants' retention of the proceeds.").

In this case, it is clear that the injustice alleged by plaintiff arises from what she contends is her superior legal right to the property at issue—the $300,000 in Seagate equity now invested in Kropf—established under the trust. The Supreme Court has recognized that a plaintiff's rights under a trust may give rise to an unjust enrichment claim. For instance, in *Newton v. Pickell*, 201 Or 225, 232-33, 269 P2d 508 (1954), the Supreme Court stated:

"'Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express

or by operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer * * *, or who is a purchaser with actual or constructive notice of the trust * * *, then the rule is universal that such heir, devisee, successor, or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. Equity impresses the trust upon the property in the hands of the transferee or purchaser, compels him to perform the trust if it be active, and to hold the property subject to the trust, and renders him liable to all the remedies which may be proper for enforcing the rights of the beneficiary.'"

(Quoting John N. Pomeroy, 4 *Equity Jurisprudence* § 1048, 102 (5th ed 1941) (emphasis added; omissions in *Newton*).) The court further stated that such a

"'universal rule forms the protection and safeguard of the rights of beneficiaries in all kinds of trust; it enables them to follow trust property,—*lands, chattels, funds of securities, and even of money*,—as long as it can be identified, into the hands of all subsequent holders who are not in the position of *bona fide* purchasers for value and without notice, it furnishes all those distinctively equitable remedies which are so much more efficient in securing the beneficiary's rights than the mere pecuniary recoveries of the law.'"

*Id.* at 233 (quoting Pomeroy, 4 *Equity Jurisprudence* § 1048 at 102 (emphasis added)).

Based on those principles, the Supreme Court has articulated three specific requirements that a plaintiff must establish to prevail in asserting an unjust enrichment claim where, as here, the plaintiff has alleged that the defendant (a third party) acquired property to which the plaintiff holds a superior right:

"First, the plaintiff must show that property or a property interest that rightfully belongs to her was taken or obtained by someone else under circumstances that in some sense were wrongful or inequitable. Next, the plaintiff must show that the person who now possesses the property is not a bona fide purchaser for value and without notice. Finally, the plaintiff must establish, with 'strong, clear and

convincing evidence,' that the property in the hands of that person, *i.e.*, the property upon which she seeks to impose a constructive trust, in fact is the very property that rightfully belongs to her, or is a product of or substitute for that property."

*Tupper*, 349 Or at 223; *see also Grimstad*, 283 Or App at 44-45 (recognizing the applicability of the *Tupper* test to third-party unjust enrichment cases).

In this case, the trial record does not establish that the court correctly analyzed plaintiff's claim under the *Tupper* standard. *See generally Haggerty and Haggerty*, 283 Or App 200, 205, 391 P3d 982 (2016) ("[A] trial court's remarks during a proceeding may help an appellate court to determine whether the trial court applied an incorrect principle of law."). Beginning with the first element, the court did not indicate whether plaintiff had a legal right to the proceeds from Seagate, or whether the defendants had acquired the property under wrongful or inequitable terms, which, in this case, are interrelated inquiries. Once more, the court stated that "plaintiff [had] an equitable interest in exactly what she received, * * * the condominium that still has value." However, we note that the issue in this case is not whether plaintiff had an equitable right to Seagate in general. Rather, the issue is whether plaintiff had an equitable interest in the property *taken out of* Seagate, either in the form of money ($300,000) or real property (Kropf). To establish that she had such an interest, plaintiff had to demonstrate that she had a legal right to Seagate without any encumbrances. That, in turn, implicates questions of law and fact regarding the interpretation of the trust's terms and the actions taken by stepmother as the trustee and trustor. Specifically, the court had to determine whether the trust allowed stepmother to encumber Seagate and, if so, under what terms. The court then had to determine whether stepmother's actions comported with those terms.

It appears that the court did not make those determinations. On the record, the court simply stated that it "was in the trustee's or the trustor's total control over what * * * they would or would not do with [Seagate] *subject to the revocable trust*, and they made their decisions." (Emphasis added.) That statement is unclear because it suggests that

stepmother had total control over Seagate but was also limited by the terms of the trust. We also note that the court stated that this case is distinguishable from *Tupper*, because there was "no testimony whatsoever that plaintiff[] contributed anything to [Seagate]." However, because plaintiff's claimed right to the disputed property does not stem from having contributed to Seagate, she was not required to prove that she had done so. Under *Tupper*, plaintiff only had to prove that she had a legal right to the property at issue under the basis that she claimed, *i.e.*, the terms of the trust.

Moreover, it is unclear whether the court considered the remaining two *Tupper* elements. The court did not indicate whether it had found that defendants were *bona fide* purchasers for value without notice of plaintiff's right to the disputed property under the trust. *Cf. Tupper*, 349 Or at 223, 227 (plaintiff had to establish "that defendant (the decedent's named beneficiary) did not give valuable consideration for being so named and had notice of the decedent's obligation to name the plaintiff as beneficiary").[3] The court also did not appear to make factual findings about whether the Kropf property was the product of or a substitute for the proceeds taken from Seagate, though there is evidence in the record as to that issue. *See id.* at 223 (a plaintiff must establish by strong, clear and convincing evidence that the property on which she seeks to impose a constructive trust is the property that rightfully belongs to her or is a substitute for that property).

Therefore, we vacate the judgment on the unjust enrichment claim and remand for the court to consider, in the first instance, whether plaintiff satisfied the elements outlined in *Tupper*. On remand, the court need only consider the arguments raised by plaintiff on appeal; that is, the court need not consider plaintiff's arguments based on the alternate theory of undue influence.

Vacated and remanded as to unjust enrichment claim; otherwise affirmed.

---

[3] The only comment made by the court as to defendants was that it did not find it "inequitable or that it shocks the *** conscience that the defendant[s] would retain [Kropf]."