Argued March 31, affirmed April 21, 1954

NEWTON *v.* PICKELL, Administrator et al.

269 P. 2d 508

*Ray Rhoten* argued the cause for appellants. On the briefs were Rhoten, Rhoten & Speerstra, of Salem.

*James O. Goodwin,* of Oregon City, argued the cause for respondent. With him on the brief was Glenn R. Jack, of Oregon City.

Before Warner, Acting Chief Justice, and Lusk, Brand and Tooze, Justices.

WARNER, A.C.J.

The plaintiff Ida A. Newton brings this suit to set aside the deed hereinafter referred to as being a conveyance in fraud of her rights accruing under an antenuptial agreement made between her and her husband in 1947. From a decree favorable to plaintiff, the defendants appeal.

Plaintiff and William L. Newton were married on June 17, 1947. Marital difficulties led to their separation sometime in March 1949. This culminated in a suit for divorce wherein each party prayed for a decree; but the suit, after trial in August 1949, terminated in a dismissal. The separation, however, continued until Mr. Newton's death in February 1951.

Mr. and Mrs. Newton had each been married before, and each was the owner of properties accumulated prior to their union in 1947. The day before their marriage they entered into an antenuptial agreement as prepared by Mr. Newton's attorneys. The essential provisions of this agreement, in which plaintiff was first party and the decedent Newton was second party, insofar as they relate to the subject real property read as follows:

"[1] In consideration of the agreements herein contained and further in consideration of the mar-

riage of the parties, the parties do agree that each will, following the marriage, continue to be sole owner of all the property and assets now owned by such party and that the party owning the respective property and assets shall own the same free from any claim or charge of any kind or character which may be made for, by, or on behalf of the other party, whether such claim or charge be by way of dower, courtesy, right on inheritance, homestead, widows' or widowers' allowance or otherwise.

"[2] This agreement with respect to the continued ownership of property and assets by the party now owning the same shall continue not only as to the property and assets now in existence but shall continue as to any substitutions or exchanges therefor, any proceeds therefrom, and any property purchased with the proceeds therefrom.

"[3] Each of the parties agrees that he or she will, whenever requested so to do, execute and deliver all instruments or documents of every kind or nature necessary or convenient for the purpose of carrying out the terms of this agreement and putting into effect the intentions herein expressed.

"[4] PROVIDED, HOWEVER, that WHEREAS, the party of the first part is by such marriage surrendering a substantial income,

"[5] NOW, THEREFORE, IT IS AGREED that there shall be excepted from the operation of this agreement the home and furnishings and car now belonging to the party of the second part, and the party of the second part agrees to convey unto the party of the first part an undivided one-half interest therein by the entirety and with the right of survivorship and such estate by the entirety and survivorship provisions shall apply to all properties therein conveyed and all properties hereafter substituted and put in the place and stead of such properties. In other words, it is the desire of the parties their home, furnishings and automobile be

joint property with the right of survivorship attached.

"* * * * *

"[6] IT IS FURTHER AGREED that the party of the first part intends to sell certain personal property belonging to her and deposit the proceeds therefrom in a bank account or bank accounts jointly with the party of the second part, with the right of survivorship, and the party of the second part agrees to contribute to such bank account or bank accounts, amounts equal to the amount so deposited by the party of the first part, and such bank account or bank accounts shall be used jointly by the parties and particularly for the purpose of the construction of a new home and for any enterprise that shall be jointly undertaken. This provision shall not apply to any bank account or accounts of either of the parties heretofore existing."

We have for the convenience of later reference numbered the foregoing paragraphs one through six, although that device was not employed in the instrument as executed.

No issue is raised as to performance on plaintiff's part under the agreement.

Long prior to and at the time of this marriage, Mr. Newton owned and occupied a parcel of residential property situated in West Salem, Polk county, Oregon. This is the parcel which is referred to in paragraph 5 above and which is the subject of the instant suit. The Newtons continued to make their home in the West Salem property until they acquired and thereafter occupied a place which they purchased in Salem, Marion county, Oregon. This Salem home was purchased with funds which each had deposited in the joint bank account referred to in the antenuptial agree-

ment. During the entire period from the date of his marriage to plaintiff until the date of his death, Mr. Newton received and retained such rentals as accrued from the West Salem property, notwithstanding the alleged delivery of the deed to his son Gerald Newton, hereinafter referred to.

It appears that on the 14th day of June, 1947, three days before his marriage to plaintiff and two days before the antenuptial agreement was signed by the parties, Mr. Newton executed a deed to the West Salem parcel in favor of his son, the defendant Gerald Newton. There was no consideration for this conveyance. The deed was not recorded until March 12, 1948, and was thereafter returned by the county recorder to the office of the attorneys who had prepared it for plaintiff's husband. Some time later, "about 2½ or 3 months" prior to the divorce trial in August 1949, the deed was mailed to Gerald Newton, then in Tillamook, Oregon. He testified that prior thereto he had neither seen nor heard about the deed. Gerald now claims title to the premises by reason of that instrument.

It is the contention of the appellants that paragraphs 5 and 6, when read together, make it clear that the parties contemplated that any new home which they purchased would be substituted for any home jointly owned by the entireties. Under this construction of the contract, appellants claim that the purchase of the Salem property effected a substitution for the West Salem property and voided any claims that Mrs. Newton might have in and to the West Salem parcel, notwithstanding her substantial contribution to the purchase price of the Salem property.

We cannot accede to this construction. Paragraph 5 above is clear and unambiguous that "there shall

be *excepted* from the operation of this agreement *the home* \* \* \* *now* belonging to the party of the second part [William Newton], and the party of the second part *agrees* to convey unto the party of the first part [plaintiff] an undivided one-half interest therein by the entirety''. (Italics ours.)

■ The relationship between the parties to an antenuptial agreement is fiduciary in character if the agreement was entered into after the parties became engaged. *Squibb v. Catching,* 264 Ill App 499; 41 CJS 573, Husband and Wife, § 99. It is a confidential relationship wherein the parties are not dealing at arms' length. Lindey, Separation Agreements and Ante-Nuptial Contracts, p. 652.

In 26 Am Jur 889, Husband and Wife § 281, it is said:

> ''An antenuptial agreement to convey property to the prospective spouse in consideration of marriage vests the equitable interest in such property, on marriage, in the latter, and the fact that a formal conveyance is not made is not sufficient to defeat the agreement.''

■ The agreement between the Newtons gave rise to a trust between them as to the instant property, creating an equitable interest in the plaintiff with the legal title reposing in the decedent as trustee. ''\* \* \* Antenuptial contracts in regulation of the interest that each shall have in the property of the other then owned or subsequently to be acquired are favored, and will be enforced by imposing a trust on the property. \* \* \*'' 1 Perry, Trusts and Trustees 7th ed, 173, § 122. Among the many cases cited by Perry in support of the foregoing rule is *Johnson v. Spicer,* 107

NY 185, 13 NE 753, 755, wherein the New York Court of Appeals makes this cogent statement:

"Antenuptial contracts, by which it is attempted to regulate and control the interest which each of the parties to the marriage shall take in the property of the other during coverture or after death, like dower, are favored by the courts, and will be enforced in equity according to the intention of the parties whenever the contingency provided by the contract arises. 2 Kent, Comm. 165; In re Young, 27 Hun, 54, affirmed, 92 N. Y. 235. No special formality is requisite in such instruments; and, in order to effectuate the intentions of the parties, courts of equity will impose a trust upon the property agreed to be conveyed, commensurate with the obligations of the contract, or will decree its specific performance, and when such relief is inadequate or impracticable from the situation of the property or the character of the contract, will award damages for its breach. De Barante v. Gott, 6 Barb. 496; Peck v. Vandemark, 99 N. Y. 29; Pom. Eq. Jur. §§ 1297, 1403; Schouler, Dom. Rel. 263-266, et seq.; Pierce v. Pierce, 71 N. Y. 156."

The same thought finds expression in 3 Scott, Trusts, 2338, § 470, in this statement:

"Where a person holding property transfers it to another in violation of his duty to a third person, the third person can reach the property in the hands of the transferee, unless the transferee is a *bona fide* purchaser. There are two types of cases which fall within this principle.

"In the first type the third person has an interest in the property prior to the transfer. In such a case, even though the interest of the third person is an equitable interest, it is not cut off by the transfer unless the transferee pays value without notice of the equity. The equity of the third person may be a beneficial interest under a trust, or it may be the interest under an equitable mort-

gage, or the interest of a purchaser under an executory contract of sale which is specifically enforceable. It is, of course, well settled that equitable interests of those sorts are not cut off by a transfer of the property to one who has notice of them or who does not pay value.

"* * * * *

"A constructive trust will be imposed where property is transferred in fraud of the rights of the transferor's wife. Where a man prior to his marriage fraudulently transfers property to another for the purpose of preventing his wife from acquiring an interest in the property, she can have the transfer set aside if the transferee was not a *bona fide* purchaser. * * *"

What then is the position of a grantee to the title to property which is the subject of an antenuptial agreement? The rule which operates either for or against him, according to the facts, in confirmation or rejection of his title so taken from one of the parties to the marital settlement is indeed a familiar one touching the title to all holders of title to property derived from a trustee. It is well stated in 4 Pomeroy, Equity Jurisprudence 5th ed, 102, § 1048:

"Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer * * *, or who is a purchaser with actual or constructive notice of the trust * * *, then the rule is universal that such heir, devisee, successor, or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. Equity impresses the

trust upon the property in the hands of the transferee or purchaser, compels him to perform the trust if it be active, and to hold the property subject to the trust, and renders him liable to all the remedies which may be proper for enforcing the rights of the beneficiary. It is not necessary that such transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation; it is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a *bona fide* purchaser for a valuable consideration and without notice. This universal rule forms the protection and safeguard of the rights of beneficiaries in all kinds of trust; it enables them to follow trust property,—lands, chattels, funds of securities, and even of money,—as long as it can be identified, into the hands of all subsequent holders who are not in the position of *bona fide* purchasers for value and without notice; it furnishes all those distinctively equitable remedies which are so much more efficient in securing the beneficiary's rights than the mere pecuniary recoveries of the law."

Also see 2 Restatement, Trusts, 879, § 289; Scott, Trusts, 1598, 1600, § 289.

█ A trust having arisen with respect to the challenged title and the defendant Gerald Newton claiming title under a deed without consideration, it follows that he holds the same as a constructive trustee for the use and benefit of the plaintiff.

The decree will be affirmed.