**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN WADSWORTH, individually and as trustee for RBT Victim Recovery Trust; RBT VICTIM RECOVERY TRUST, *Plaintiffs-Appellants*, <br><br> v. <br><br> RONALD B. TALMAGE and ANNETTE C. TALMAGE, In Default as of 8/31/2017; RIVERCLIFF FARM, INC., an Oregon corporation - In Default as of 1/26/2017; NEW CENTURY PROPERTIES LTD., In Default as of 8/31/2017, *Defendants*, <br><br> and <br><br> UNITED STATES OF AMERICA, *Defendant-Appellee*. | No. 17-35805 <br><br> D.C. No. 3:16-cv-02082-SI <br><br><br> ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF OREGON |

Filed December 27, 2018

Before: William A. Fletcher, Jay S. Bybee,
and Paul J. Watford, Circuit Judges.

Order

**SUMMARY**[*]

**Constructive Trust / Oregon State Law**

The panel certified to the Oregon Supreme Court the
following question:

> Under Oregon law, does a constructive trust
> arise at the moment of purchase of a property
> using fraudulently-obtained funds, or does it
> arise when a court orders that a constructive
> trust be imposed as a remedy?

**COUNSEL**

William B. Ingram and Alan R. Houston, Strong & Hanni,
Salt Lake City, Utah, for Plaintiffs-Appellants.

Randolph L. Hutter and Thomas J. Clark, Attorneys; Richard
E. Zuckerman, Principal Deputy Assistant Attorney General;

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Tax Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

## ORDER

Pursuant to Oregon Revised Statute § 28.200, we respectfully certify the following question to the Oregon Supreme Court:

Under Oregon law, does a constructive trust arise at the moment of purchase of a property using fraudulently-obtained funds, or does it arise when a court orders that a constructive trust be imposed as a remedy?

We respectfully ask the Oregon Supreme Court to exercise its discretionary authority under Oregon's Uniform Certification of Questions of Law Act to accept and decide this question. *See* Or. Rev. Stat. §§ 28.200–.255. The certified question of law would be determinative of a cause now pending in this court and it appears to this court that there is no controlling precedent in the decisions of the Oregon Supreme Court or the Oregon Court of Appeals. *Id.* § 28.200.

## BACKGROUND

### I. Factual and Procedural History

We begin by setting forth a "statement of all facts relevant to the question[] certified" to show "fully the nature of the controversy in which the question[] arose." Or. Rev. Stat. § 28.210(2).

The underlying case arises out of competing claims to real property known as the RiverCliff Property ("RiverCliff") in Corbett, Oregon, located in Multnomah County. Because this case was resolved in federal district court on a motion to dismiss, the factual background is based on the allegations in the complaint, which we assume to be true.

John Wadsworth and other members of the RBT Victim Recovery Trust (collectively, "the Trust") allege that Ronald Talmage, an investment manager, began fraudulently diverting his clients' funds in the 1990s as part of a Ponzi scheme. Members of the Trust entrusted Talmage with "over $55 million" between 2002 and 2015.

In 1997, Talmage and his first wife purchased RiverCliff for almost $1 million. The property was purchased with the proceeds of Talmage's Ponzi scheme. From 1998 to 2008, Talmage spent over $12.5 million of entirely stolen funds to improve the property. Talmage paid his first wife $1.5 million dollars in 2005 using money "stolen . . . from . . . Trust beneficiaries" to purchase her half-interest in RiverCliff after the couple divorced. Throughout this time, Talmage resided at RiverCliff.

Talmage and his current wife failed to pay federal income taxes for the tax years of 1998–2005 and 2007. The Internal Revenue Service filed notices of federal tax liens in Multnomah County on September 17, 2008; November 28, 2008; May 20, 2013; and January 31, 2014. The federal government ("Government") then brought an action in U.S. District Court in Oregon seeking "to foreclose its tax liens on" RiverCliff. *United States v. RiverCliff Farm, Inc.*, No. 3:16-cv-1248-SI, 2017 WL 3388172, at *2 (D. Or. Aug. 7, 2017). The Trust sought to intervene in the Government's

foreclosure action, but intervention was denied. *See United States v. River Cliff Farm, Inc.*, No. 3:16-cv-1248-SI, 2016 WL 4582048, at *1 (D. Or. Sept. 2, 2016), *reconsideration denied*, 2016 WL 6662696 (Nov. 10, 2016).

The Trust then brought the present action to quiet title to RiverCliff as to the Government. The Trust's complaint contends that because Talmage "used wholly stolen funds" to obtain and improve RiverCliff, "he did not hold an enforceable or legitimate property interest" in the property. The Trust contends that the Government's federal tax liens therefore could not attach to RiverCliff under 26 U.S.C. § 6321, which authorizes liens on "all property and rights to property . . . belonging to" a person who owes "back taxes." The Trust contends that it has either an exclusive or superior interest in RiverCliff under Oregon law as a resulting trust, as a constructive trust, or based on other equitable relief.

The Government moved to dismiss the quiet title claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. The Government argued that Talmage had the property rights of any deed-holder in RiverCliff, including, for example, the right to exclude trespassers. It further argued that even assuming Talmage should be treated as holding voidable title based on the Trust's constructive trust, Talmage had the right to transfer the property to a bona fide purchaser under Or. Rev. Stat. § 72.4030(1). The Government argued that RiverCliff therefore "belonged" to Talmage within the meaning of 26 U.S.C. § 6321, and that a federal tax lien could attach. It argued that the Trust had, "at most," a claim that did not become choate until after the federal tax liens had attached. The Government argued its tax liens were therefore superior to any claims the Trust might have.

On August 1, 2017, the district court granted the Government's motion to dismiss under Rule 12(b)(6). It held that "the Trust's allegations do not show that the Trust's beneficiaries currently own the RiverCliff Property in either constructive or resulting trust under Oregon law." The court held that Talmage, by contrast, had acquired rights in RiverCliff under Oregon law because he "acquired title" and thereafter resided at RiverCliff, asserting "substantial control" over the property. The court concluded that under Oregon law even an embezzler subject to a constructive trust can transfer title to a bona fide purchaser (citing *Tupper v. Roan*, 349 Or. 211, 223 (2010)) and can encumber the property (citing *Evergreen W. Bus. Ctr., LLC v. Emmert*, 354 Or. 790, 792, 805 (2014)). Finally, the court held that even if a constructive trust existed or would exist in the future, the federal tax liens would still take priority because they had already attached to Talmage's interest in RiverCliff, while any claim to a trust had not. The Trust appealed.

## II. Discussion

The question in this case is whether federal tax liens could attach to Talmage's interest in RiverCliff while it was subject to a constructive trust. The answer turns on Oregon state law regarding constructive trusts. Under 26 U.S.C. § 6321:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

To determine whether property "belongs" to someone within the meaning of § 6321, a federal court must, first, "look . . . to state law to determine what rights the taxpayer has in the property the Government seeks to reach," and then, second, "determine whether the taxpayer's state-delineated rights qualify as 'property' or 'right to property' within the compass of" 26 U.S.C. § 6321. *Drye v. United States*, 528 U.S. 49, 58 (1999). Section 6321 does not create property rights, "but merely attaches consequences, federally defined, to rights created under state law." *United States v. Craft*, 535 U.S. 274, 278 (2002). "[I]n determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' the important consideration is the breadth of the control the taxpayer could exercise over the property." *Drye*, 528 U.S. at 61 (internal alterations and citation omitted).

The Trust argues that its constructive trust in RiverCliff prevents the Government from obtaining a lien against the property. To prove a constructive trust under Oregon law, a plaintiff must show:

> (1) "that property or a property interest that rightfully belongs to her was taken or obtained by someone else under circumstances that in some sense were wrongful or inequitable;" (2) "that the person who now possesses the property is not a bona fide purchaser for value and without notice;" and (3) by "strong, clear and convincing evidence, that the property in the hands of that person, i.e., the property upon which she seeks to impose a constructive trust, in fact is the very property that rightfully belongs to

her, or is a product of or substitute for that
property."

*Tupper v. Roan*, 243 P.3d 50, 58 (Or. 2010) (en banc)
(internal quotations omitted). Here, the Trust has plausibly
pleaded that RiverCliff is the "product" of funds that
rightfully belong to Trust members but that were taken by
Talmage under "wrongful" circumstances. The Trust has
thus plausibly pleaded that RiverCliff is subject to a
constructive trust under Oregon law, with the Trust members
as beneficiaries. The issue in this case becomes, then, what
rights Oregon law affords to the beneficiary of a constructive
trust in a case where the property is subject to a federal tax
lien.

The rights of the legal title-holder, and of lienors such as
the Government, depend on when the constructive trust
arises. Under the laws of the several states, a constructive
trust can arise either at the moment a purchase is made with
the fraudulently-obtained funds, or at the moment a court
imposes the trust as an equitable remedy. Under the majority
rule, a trust arises automatically at the moment of purchase.
*See In re Leitner*, 236 B.R. 420, 424 (Bankr. D. Kan. 1999)
("[U]nder the majority state law rule, a constructive trust
arises at the time of the occurrence of the events giving rise
to the duty to reconvey the property, not at the date of final
judgment declaring the trust . . ."); *see also* RESTATEMENT
(THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 55 cmt.
e (2011). In states following this rule, the legal title-holder is
a constructive trustee who holds no rights beyond bare legal
title. For purposes of the federal tax lien statute, 26 U.S.C.
§ 6321, property held in a constructive trustee-taxpayer's
name therefore does not "belong" to the taxpayer, and tax
liens cannot attach. *See, e.g.*, *FTC v. Crittenden*, 823

F. Supp. 699, 704 (C.D. Cal. 1993) (finding that an "IRS lien does not attach" to business funds that are subject to a constructive trust under California law); *Mervis Indus., Inc. v. Sams*, 866 F. Supp. 1143, 1147 (S.D. Ind. 1994) (finding tax liens could not attach to property whose title is held by an embezzler because Indiana law "is clear" that "an embezzler, from the beginning, acquires no beneficial ownership in property purchased with stolen funds").

Under the minority rule, a constructive trust arises only once it is imposed as a judicial remedy. In that case, the legal title-holder retains all the rights of a property owner until such a remedy is imposed by a court. Until that time, the property "belongs" to the title-holder for purposes of 26 U.S.C. § 6321 and federal tax liens against the title-holder can attach. If no court has imposed a trust when the tax liens attach, the beneficiaries of a potential constructive trust hold at most an inchoate claim to the property. For example, in *Blachy v. Butcher*, 221 F.3d 896, 905 (6th Cir. 2000) (quoting *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.*, 244 N.W. 138, 140 (Mich. 1932)), the Sixth Circuit found that "[u]nder Michigan law, a 'constructive trust is strictly not a trust at all, but merely a remedy administered in certain fraudulent breaches of trusts.'" Because "a constructive trust does not arise until a judicial decision imposes such a trust under Michigan law," beneficiaries of the trust alleged in that case held only an inchoate state-created lien, over which an attached federal tax lien takes priority. *Id.*

In the case before us, the Trust can prevail in its quiet title action only if, under Oregon law, a constructive trust arises at the moment of the purchase of a property with ill-gotten gains, such that the purchaser never acquires rights in the property beyond bare legal title. No Oregon statute defines

when a constructive trust arises. Nor are we aware of any decision from the Oregon Supreme Court or intermediate appellate courts that defines when a constructive trust arises for purposes of determining which rights, if any, the legal title-holder has in the property under state law.

Descriptions of constructive trusts by the Oregon Supreme Court appear to provide support for both the majority and minority rule. In 1954, the Court stated that a constructive trust had arisen upon a fraudulent transfer, even though in that case there had been no previous judicial declaration. *Newton v. Pickell*, 269 P.2d 508, 512 (Or. 1954). In 1955, the Court indicated that section 166 of the Restatement of Restitution accurately described the Oregon law of constructive trusts. *See Barnes v. E. & W. Lumber Co.*, 287 P.2d 929, 948 (Or. 1955) (en banc). Comment b of that section provided that "[w]here one person acquires title to . . . money from another by fraud, he holds the chattels or money upon a constructive trust for the defrauded person" and that in the case of the fraudulent person's bankruptcy (which presents an analogous question to that of competing liens) "the defrauded person is entitled to enforce a constructive trust of the chattel and compel the trustee in bankruptcy to restore the chattel in specie." RESTATEMENT (FIRST) OF RESTITUTION § 166 cmt. b (1937). And in 1977, the Court wrote that "it is now universally recognized that a constructive trust will arise *when* stolen or embezzled funds are used to purchase other property. The owner of the funds may follow and recover the property or its proceeds as long as it has not been transferred to a bona fide purchaser." *Lane Cty. Escrow Serv., Inc. v. Smith*, 560 P.2d 608, 615 (Or. 1977) (en banc) (emphasis added) (citing A.L.R.3D CONSTRUCTIVE TRUSTS-STOLEN FUNDS 1359 (1971) and V SCOTT ON TRUSTS § 462.4 (3d ed 1967)). More recently,

however, the Court described a constructive trust "as an equitable *remedy*, available to *divest* an individual who has been unjustly enriched of property that he or she 'ought not, in equity and good conscience, hold and enjoy.'" *Evergreen W. Bus. Ctr., LLC v. Emmert*, 323 P.3d 250, 255 (Or. 2014) (en banc) (emphases added) (quoting *Marston v. Myers et ux.*, 342 P.2d 1111, 1116 (Or. 1959)).  The question presented to the Court in *Evergreen* was not when a constructive trust arises, but rather whether a constructive trust is an equitable or legal remedy.  *Id.* at 252.  We therefore hesitate to conclude that the Court intended for its labeling of a constructive trust as a "remedy" to answer the question at issue in this case.

Opinions by the Oregon Court of Appeals similarly lend support to both approaches.  In one case, the Court of Appeals described constructive trusts as "remedial devices to avoid unjust enrichment when no other adequate remedy is available." *Brown v. Brown*, 136 P.3d 745, 752 (Or. Ct. App. 2006).  However, to support this proposition, the court cited an earlier Court of Appeals decision holding that "[a] constructive trust may be imposed only when the putative trustee holds property *which rightfully belongs to another* and is thereby unjustly enriched." *Id.* (emphasis added) (quoting *McDonald v. McDonald*, 643 P.2d 1280, 1282 (Or. Ct. App.), *review denied*, 648 P.2d 854 (Or. 1982)).

We thus find no "controlling precedent" on the question of when a constructive trust arises for purposes of determining the question before us.  Because the resolution of this case turns solely on Oregon law, we certify this question to the Oregon Supreme Court for an authoritative decision of this issue.

CONCLUSION

We accordingly respectfully certify to the Oregon Supreme Court the following question of Oregon law:

Under Oregon law, does a constructive trust arise at the moment of purchase of a property using fraudulently-obtained funds, or does it arise when a court orders that a constructive trust be imposed as a remedy?

Our phrasing of the question should not restrict the Court's consideration of the issues involved. We acknowledge that "[t]he [C]ourt may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties," *Toner ex rel. Toner v. Lederle Labs.*, 779 F.2d 1429, 1433 (9th Cir. 1986), and "[w]e agree to abide by the decision of the Oregon Supreme Court," *Doyle v. City of Medford*, 565 F.3d 536, 544 (9th Cir. 2009). If the Court determines that the question presented in this case is inappropriate for certification, or if it declines the certification for any other reason, we will resolve the question according to our best understanding of Oregon law.

The Clerk will file a certified copy of our Order with the Oregon Supreme Court under Oregon Revised Statute § 28.215. The Clerk will also provide the Oregon Supreme Court a copy of the record in this case, in whole or in part, upon request. Further proceedings in this case are stayed pending receipt of the answer to the certified question or notification from the Oregon Supreme Court that it declines to answer. The parties shall notify this Court within ten days after the Oregon Supreme Court accepts or rejects certification. If the Oregon Supreme Court accepts certification, the parties shall file a joint status report with this

Court six months after the date of acceptance and every six months thereafter until the case is decided. The parties shall then notify this Court within ten days of the Oregon Supreme Court's decision. The Clerk is directed to administratively close this docket, pending further order.

William A. Fletcher, Circuit Judge, Presiding