**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DW AINA LE'A DEVELOPMENT, LLC, *Plaintiff-Appellant*, v. STATE OF HAWAI'I LAND USE COMMISSION; DOES, Governmental Units, 1–10; STATE OF HAWAI'I, *Defendants-Appellees*. | No. 17-16280 D.C. No. 1:17-cv-00113-SOM-RLP ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF HAWAI'I |

Filed March 7, 2019

Before: Richard C. Tallman, Jay S. Bybee,
and N. Randy Smith, Circuit Judges.

## SUMMARY*

### Civil Rights

The panel certified the following question to the Hawai'i Supreme Court:

> What is the applicable statute of limitations for a claim against the State of Hawai'i alleging an unlawful taking of "[p]rivate property . . . for public use without just compensation," Haw. Const. art. I, § 20?

## COUNSEL

Sang J. Peter Sim, Sim & Record LLP, Bayside, New York, for Plaintiff-Appellant.

Ewan Christopher Ravner, Deputy Solicitor General; Clyde J. Wadsworth, Solicitor General; Douglas S. Chin, Attorney General; Department of the Attorney General, Honolulu, Hawai'i; for Defendants-Appellees.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

Pursuant to Haw. Rev. Stat. § 602-5(a)(2) and Hawaiʻi Rule of Appellate Procedure 13, we respectfully certify the following question to the Hawaiʻi Supreme Court:

> What is the applicable statute of limitations for a claim against the State of Hawaiʻi alleging an unlawful taking of "[p]rivate property . . . for public use without just compensation," Haw. Const. art. I, § 20?

This significant question of law is "determinative of the cause" in this court and is not answered by statute or any "clear controlling precedent in the Hawaiʻi judicial decisions." Haw. R. App. P. 13(a). We therefore respectfully ask the Hawaiʻi Supreme Court to exercise its discretion to accept and decide it.

Below we provide a "statement of facts showing the nature of the cause," a "statement of prior proceedings in the case," the "circumstances out of which the [certified] question arises," and the "question of law to be answered." Haw. R. App. P. 13(b).

## I.  STATEMENT OF FACTS

This appeal arises out of a dispute over the classification of approximately 1,060 acres of land in South Kohala on Hawaiʻi Island.  The facts of the underlying dispute are detailed in *DW Aina Leʻa Development, LLC v. Bridge Aina Leʻa, LLC*, 339 P.3d 685, 689–703 (Haw. 2014).  We briefly review them here along with the factual allegations contained in the complaint, which we accept as true for purposes of this

appeal. *See Wadsworth v. Talmage*, 911 F.3d 994, 995 (9th Cir. 2018).

In 1989, the State of Hawaiʻi Land Use Commission ("Commission") reclassified the land in South Kohala from "agricultural" use to "urban" use in order to allow for the development of a residential community. The reclassification was subject to several conditions, including a condition that a certain percentage of the newly constructed residential units be affordable. The Commission amended that condition over the years as ownership of the land changed hands, and by 2005, the Commission required the landowner, Bridge Aina Leʻa, LLC ("Bridge"), to construct no fewer than 385 affordable units, which constituted 20% of the total units to be constructed.

In December 2008, the Commission issued a show cause order requiring Bridge to explain why the land should not revert to its former agricultural use classification. The Commission believed that Bridge and its predecessors-in-interest had failed "to perform according to the conditions imposed and to the representations and commitments made to the [Commission] in obtaining reclassification" of the property. In addition to responding to the show cause order, Bridge informed the Commission in February 2009 that it had entered into a purchase agreement with DW Aina Leʻa Development, LLC ("DW") that gave DW the right to develop the residential community. DW then invested more than $28 million developing the property, constructing more than a dozen townhouses and grading the site for roads, utilities, and additional townhouses.

Nevertheless, in April 2009, the Commission voted unanimously to return the land to its former agricultural use

classification.  Bridge sought reconsideration, with DW now on board as a co-petitioner before the Commission, but those efforts failed.  Following numerous hearings, the Commission issued a final, written order on April 25, 2011, reclassifying the property as agricultural.  Shortly thereafter, Bridge and DW sought judicial review of the Commissionʻs order in state court.  The Hawaiʻi Supreme Court ultimately vacated the Commissionʻs order, concluding that, because use of the property had "substantially commenced," the Commission improperly reclassified the property without complying with certain statutory requirements for doing so.  *DW Aina Leʻa*, 339 P.3d at 711–14 (discussing the requirements set forth in Haw. Rev. Stat. § 205-4).[1]

## II.  STATEMENT OF PRIOR PROCEEDINGS

On February 23, 2017, DW filed a complaint in Hawaiʻi state court against the Commission and the State of Hawaiʻi asserting takings claims under both the United States Constitution and the Hawaiʻi Constitution.  DW alleged that the Commissionʻs reclassification of the property as

---

[1] After the Commission entered its written order, Bridge also filed a second lawsuit against the Commission alleging, among other things, that the reclassification of the land constituted an unconstitutional taking without just compensation.  That lawsuit, which the State removed to federal court, was stayed pending the Hawaiʻi Supreme Courtʻs review of the Commissionʻs reclassification order.  *See Bridge Aina Leʻa, LLC v. Haw. Land Use Commʻn*, 125 F. Supp. 3d 1051, 1057 (D. Haw. 2015).  Once that decision came down, Bridgeʻs takings claims proceeded to trial, where a "jury found that the State had taken [Bridgeʻs] property without just compensation." *Bridge Aina Leʻa, LLC v. Haw. Land Use Commʻn*, No. 1:11-cv-00414-SOM-KJM, 2018 WL 3149489, at *1 (D. Haw. June 27, 2018).  Bridge was awarded only nominal damages. *See id.*  For reasons that remain largely unexplained, DW never sought to become a party in Bridgeʻs takings suit.

agricultural constituted a regulatory taking of DW's property without just compensation. Specifically, DW alleged that the reclassification increased the purchase price of the property after DW had agreed to purchase it, destroyed DW's "sophisticated funding arrangement [with] Asia" for developing the property, and caused DW to sustain other increased costs and losses in business opportunities. The State removed the case to federal court and moved to dismiss the complaint as barred by the applicable statute of limitations.

The district court granted the State's motion to dismiss.[2] The parties agreed that DW's takings claims accrued when the Commission issued its order on April 25, 2011. Regarding the federal takings claim, the court determined that, although this claim was not (and could not be) brought against the State under 42 U.S.C. § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), the statute of limitations that ordinarily governs § 1983 actions—the statute of limitations for general personal injury torts, *see Wilson v. Garcia*, 471 U.S. 261, 276–79 (1985)—applies. The

---

[2] The district court also addressed several threshold issues, none of which is at issue in this appeal. First, the court concluded that DW's federal takings claim was not barred by the exhaustion requirement set forth in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 192–97 (1985), noting that the State removed the case to federal court and raised no jurisdictional or ripeness argument in doing so. Second, the court concluded that the State waived its Eleventh Amendment sovereign immunity from suit in federal court by voluntarily removing the case to federal court. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618–20 (2002). And third, the court concluded that it could retain supplemental jurisdiction over DW's state takings claim despite having dismissed the federal takings claim. *See* 28 U.S.C. § 1367. The parties do not challenge any of those conclusions on appeal, and we accordingly express no opinion on them.

limitations period for personal injury torts in Hawaiʻi is two years.  Haw. Rev. Stat. § 657-7.  The court thus concluded that DW's federal takings claim is time-barred.  The court also concluded in the alternative that DW's federal takings claim is time-barred under Haw. Rev. Stat. § 661-5, which provides a two-year limitations period for "[e]very claim against the State, cognizable under [Part I of Chapter 661]." In light of these two statutes, the court rejected DW's reliance on the six-year "catch-all" statute of limitations, Haw. Rev. Stat. § 657-1(4).  Finally, the court concluded that, like the federal takings claim, DW's state takings claim under the Hawaiʻi Constitution is time-barred under either Haw. Rev. Stat. §§ 657-7 or 661-5.  The court thus dismissed this action in its entirety, and DW filed a timely notice of appeal.

## III.  LEGAL CIRCUMSTANCES

On appeal, the parties do not dispute the relevant dates for limitations purposes—DW's takings claims accrued on April 25, 2011, and DW filed its complaint on February 23, 2017, more than five years later.  The only issue is identifying the applicable statute of limitations.  And although the parties focus on DW's federal takings claim, DW's state takings claim remains at issue, and the applicable limitations period may control its federal takings claim as well.[3]  Accordingly,

---

[3] There is no federal statute of limitations for federal takings claims brought against a state.  When, as here, there is no "controlling federal limitations period, the general rule is that a state limitations period for an analogous cause of action is borrowed and applied to the federal claim, provided that the application of the state statute would not be inconsistent with underlying federal policies."  *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 240 (1985).  In this case, the most analogous cause of action would be an inverse condemnation action under state law.  And even if we, like the district court, were to accept the State's argument that

in all events, determining the correct statute of limitations for DW's state takings claim is outcome determinative for some, and perhaps all, of DW's claims.

Under the Hawaiʻi Constitution, "[p]rivate property shall not be taken or damaged for public use without just compensation." Haw. Const. art. I, § 20. Although proceedings for the condemnation of private property are governed by statute, *see* Haw. Rev. Stat. § 101-1 *et seq.*, an "inverse condemnation" action—i.e., an action by a property owner "to recover the value of property that has been taken by the government . . . without exercising the power of eminent domain"—is "not specifically provided by statute," *Leone v. County of Maui*, 284 P.3d 956, 962 (Haw. Ct. App. 2012). Nor do the Hawaiʻi statutes prescribe a limitations period for bringing an inverse condemnation action. DW argues that the six-year "catch-all" limitations period in Haw. Rev. Stat. § 657-1(4) applies, while the State argues that the two-year limitations periods in either Haw. Rev. Stat. §§ 657-7 or 661-5 applies.

The Hawaiʻi Supreme Court has not had occasion to decide this issue, and other states that have addressed it have taken various approaches in doing so. *See, e.g.*, *Klumpp v. Borough of Avalon*, 997 A.2d 967, 977 (N.J. 2010) (describing the divergent views among states in which "there is no statute of limitations on point" for inverse condemnation

---

the two-year limitations period for personal injury claims, Haw. Rev. Stat. § 657-7, applies to DW's federal takings claim based on the reasoning in *Wilson*, 471 U.S. at 275–79, and *Van Strum v. Lawn*, 940 F.2d 406, 408–10 (9th Cir. 1991), the timeliness of DW's state takings claim would remain at issue. We accordingly do not address the limitations period applicable to DW's federal takings claim at this time.

actions); *see also* 27 Am. Jur. 2d *Eminent Domain* § 732 (Feb. 2019); Charles C. Marvel, Annotation, *State Statute of Limitations Applicable to Inverse Condemnation or Similar Proceedings by Landowner to Obtain Compensation for Direct Appropriation of Land Without the Institution or Conclusion of Formal Proceedings Against Specific Owner*, 26 A.L.R.4th 68 (1983 & Supp. 2018).  Ordinarily, "[w]hen the highest court of a state has not directly spoken on a matter of state law," we "use [our] 'own best judgment in predicting how the state's highest court would decide the case.'" *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018) (quoting *Fiorito Bros. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir. 1984)).  But given the sparse Hawai'i case law and the variety of approaches taken in other jurisdictions, we are unable to conclude with any certainty which statute of limitations the Hawai'i Supreme Court would apply.

A.  *Section 657-1(4)*

According to DW, the applicable statute of limitations is Haw. Rev. Stat. § 657-1(4), which imposes a six-year limitations period on "[p]ersonal actions of any nature whatsoever not specifically covered by the laws of the State." But for this "catch-all" provision to apply, the claim must not be "governed by a specific limitations period." *Au v. Au*, 626 P.2d 173, 179 (Haw. 1981).  In this case, the State has identified two specific statutes of limitations that it claims govern DW's takings claim—Haw. Rev. Stat. §§ 661-5 and 657-7.  We accordingly address each statute in turn.

## B.   *Section 661-5*

The State argues that the applicable limitations period is Haw. Rev. Stat. § 661-5, which provides: "Every claim against the State, cognizable under this part, shall be forever barred unless the action is commenced within two years after the claim first accrues."  Chapter 661 is titled "Actions by and Against the State," and Part I vests state courts with jurisdiction to hear "[a]ll claims against the State founded upon any statute of the State; upon any rule of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature."  *Id.* § 661-1(1).  Although DW's takings claim is a claim "against the State," the State does very little to explain how this claim, brought under the Hawaiʻi Constitution, is "founded upon" a state "statute," executive "rule," or "contract."

The State advances two primary arguments.  First, the State relies on a footnote in *Maunalua Bay Beach Ohana 28 v. State*, 222 P.3d 441, 458 n.12 (Haw. Ct. App. 2009), a decision from the Hawaiʻi Intermediate Court of Appeals that the State offers as "the only Hawaiʻi case addressing the limitations period for takings claims."  In that case, the plaintiffs filed an "inverse-condemnation lawsuit" against the State challenging a statute governing ownership of future accreted land.  *Id.* at 442–43.  The plaintiffs claimed that the statute constituted a taking of their "right to future accretions" without just compensation "and thereby violated article I, section 20 of the Hawaiʻi State Constitution."  *Id.* at 460.  In the "Procedural History" section of the decision, the court noted that the plaintiffs filed their lawsuit "one day shy of two years from the date of [the statute's] enactment."  *Id.* at 458 (capitalization altered).  And following that observation,

the court inserted a footnote: "Pursuant to [§ 661-5], '[e]very claim against the State, cognizable under this chapter, shall be forever barred unless the action is commenced within two years after the claim first accrues.'" *Id.* at 458 n.12 (second alteration in original) (quoting Haw. Rev. Stat. § 661-5 (1993)).[4]

We are skeptical of the State's reliance on *Maunalua Bay*. The State is correct that, although we are not bound by "decisions of [a] state's intermediate appellate court" when deciding an unresolved issue of state law, we can look to such decisions "as guidance" in "predict[ing] how the highest state court would decide the issue." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1278 (9th Cir. 2013) (citation omitted). But *Maunalua Bay* provides very little guidance, as the timeliness of the lawsuit was not at issue in that case. The court thus had no occasion to explain how a takings claim based on the Hawaiʻi Constitution is "founded upon" a state "statute," executive "rule," or "contract," Haw. Rev. Stat. § 661-1(1), such that it is "cognizable under" Part I of Chapter 661, *id.* § 661-5.

In fact, a decision from the Hawaiʻi Supreme Court seems to reject that conclusion. In *Kahoʻohanohano v. State*, 162 P.3d 696 (Haw. 2007), the plaintiffs argued that a statute reducing contributions to a state employee retirement system was "unconstitutional as being violative of article XVI, section 2 of the Hawaiʻi Constitution," *id.* at 732 (emphasis

---

[4] In 2016, the Hawaiʻi State Legislature amended § 661-5 by replacing the phrase "cognizable under this chapter" with the phrase "cognizable under this part." 2016 Haw. Sess. Laws 109. This technical amendment makes no difference here, as the only other "part" of Chapter 661 governs false claims actions.

and internal alterations omitted), which provides that membership in an employee retirement system "shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired," Haw. Const. art. XVI, § 2. The Hawai'i Supreme Court held that the two-year limitations period in § 661-5 did not apply to these "constitutional claims," as they were "plainly not 'founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract,'" and thus "not 'cognizable under [Chapter 661].'"  *Kaho'ohanohano*, 162 P.3d at 732 (citations omitted); *see also Kaleikini v. Yoshioka*, 304 P.3d 252, 266 (Haw. 2013) ("[C]laims based on the constitution are not 'founded upon any statute of the State.'" (internal alteration omitted) (quoting *Kaho'ohanohano*, 162 P.3d at 732)).   And although the State correctly observes that *Kaho'ohanohano* did not involve a constitutional takings claim, the reasoning in that decision does not appear to be based on the *type* of constitutional claim but on the fact that constitutional claims are "plainly not 'founded upon'" a state statute, rule, or contract.  162 P.3d at 732 (quoting Haw. Rev. Stat. § 661-1(1)).

Second, the State argues that DW's takings claim should be "characterized as premised upon an implied contract between the State and the landowner."  But the State does not support this argument with Hawai'i law; instead, the State relies on cases from other jurisdictions that characterize takings claims as contractual in nature for statute-of-limitations purposes.  *See Hager v. City of Devils Lake*, 773 N.W.2d 420, 432 (N.D. 2009); *Richmeade, L.P. v. City of Richmond*, 594 S.E.2d 606, 608–10 (Va. 2004); *State ex rel. R.T.G., Inc. v. State*, 780 N.E.2d 998, 1005 (Ohio 2002); *Hunter v. City of Mobile*, 13 So. 2d 656, 659 (Ala. 1943). Although these cases might support the State's proposed rule,

that rule has not been uniformly adopted.  Indeed, at least one state supreme court has expressly rejected it, reasoning that "the right to recover damages for property taken does not rest solely upon a contract . . . but rests primarily upon a vested constitutional right."  *Hiji v. City of Garnett*, 804 P.2d 950, 958 (Kan. 1991).

If anything, the State's implied-contract theory is in significant tension with *Kahoʻohanohano*, which concluded that the plaintiffs' constitutional claims were "not 'founded upon . . . any contract,'" 162 P.3d at 732 (quoting Haw. Rev. Stat. § 661-1(1)), even though the constitutional provision at issue in that case *expressly* refers to "a contractual relationship," Haw. Const. art. XVI, § 2.  Thus, although the Hawaiʻi Supreme Court could decide—as *Maunalua Bay* suggests—that constitutional takings claims are governed by the two-year limitations period in § 661-5, the reasoning in *Kahoʻohanohano* seems to counsel against that conclusion.

C.  *Section 657-7*

The State argues in the alternative that the applicable statute of limitations is Haw. Rev. Stat. § 657-7, which provides a two-year limitations period for "[a]ctions for the recovery of compensation for damage or injury to persons or property."  According to the State, the fact that the word "compensation" appears in both § 657-7 and the Takings Clause of the Hawaiʻi Constitution "alone is enough to show that the statute is applicable to claims under the takings clause."

The State's focus on the word "compensation" ignores the remainder of § 657-7's text.  That a plaintiff is seeking "just compensation" for the taking of private property, Haw. Const.

art. I, § 20, does not necessarily mean that the plaintiff is seeking "compensation *for damage or injury to persons or property*," Haw. Rev. Stat. § 657-7 (emphasis added). The relevant question is whether an unconstitutional taking of private property without just compensation amounts to "damage or injury to . . . property."

The Hawaiʻi Supreme Court has interpreted § 657-7 to apply to "claims for damages resulting from *physical* injury to persons or *physical* injury to tangible interests in property," but not to claims involving a "nonphysical injury to an intangible interest of [the] plaintiff." *Au*, 626 P.2d at 178 (emphasis added) (quoting *Higa v. Mirikitani*, 517 P.2d 1, 3 (Haw. 1973)). Thus, with respect to real property, the statute has been applied to actions alleging "trespass *quare clausum fregit*,"[5] *Chin Kee v. Kaeleku Sugar Co.*, 30 Haw. 17, 19–21 (1927); *Kauha v. Palolo Land & Improvement Co.*, 20 Haw. 237, 239 (1910), actions alleging physical damage to land due to the negligence of a neighboring property owner, *Mauian Hotel, Inc. v. Maui Pineapple Co.*, 481 P.2d 310, 312 & n.1 (Haw. 1971); *Basque v. Yuk Lin Liau*, 441 P.2d 636, 637 (Haw. 1968), and an action alleging physical destruction of crops due to the diversion of a water source necessary for irrigation, *Wong Nin v. City & Cty. of Honolulu*, 33 Haw. 379, 380 (1935).

DW's takings claim, by contrast, is predicated on the State's improper reclassification of DW's property from urban use to agricultural use. The injury is the State's regulatory taking of property without just compensation, not

---

[5] This is a tort action "to recover damages resulting from another's unlawful entry on one's land that is visibly enclosed." *Trespass Quare Clausum Fregit*, *Black's Law Dictionary* (10th ed. 2014).

physical damage to the property or trespass upon it.  This distinction has led courts in other jurisdictions to conclude that a "statute of limitations for 'injuries to persons and property' is not applicable to inverse condemnation actions." *Hart v. City of Detroit*, 331 N.W.2d 438, 444 (Mich. 1982); *see also* Marvel, Annotation, 26 A.L.R.4th 68, § 7[b] (collecting cases in which "statutes of limitation pertaining generally to trespass actions or actions for injury to property were held inapplicable to actions for compensation for the taking of property without compensation").  In light of the Hawaiʻi Supreme Court's insistence on a "*physical* injury to tangible interests in property," *Au*, 626 P.2d at 178 (emphasis added) (citation omitted), the Hawaiʻi Supreme Court could reasonably conclude that § 657-7 does not apply to a regulatory takings claim brought in an inverse condemnation action.

\* \* \*

The State may be correct in its assertion that either § 661-5 or § 657-7 provides the applicable limitations period for DW's state takings claim under the Hawaiʻi Constitution.  But we believe that the best course of action is to certify that question to the Hawaiʻi Supreme Court.[6]  Not only is the question dispositive in this case and unanswered by Hawaiʻi authority, *see* Haw. R. App. P. 13(a), but it is also a significant question of state law that could "have far-reaching consequences for the people and businesses of Hawaiʻi," *Apana v. TIG Ins. Co.*, 574 F.3d 679, 684 (9th Cir. 2009).  In our view, allowing the Hawaiʻi Supreme Court to resolve this question after analyzing the competing considerations as well

---

[6] Although the parties do not request certification, we may "certify a question sua sponte."  *T-Mobile*, 908 F.3d at 587 n.6.

as the views of other jurisdictions—rather than to trying "to predict uncertain [state] law" in the first instance—will foster the "cooperative judicial federalism" that the certification procedure is designed to promote. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

## IV.  CERTIFIED QUESTION

In light of the foregoing, we respectfully certify the following question to the Hawaiʻi Supreme Court:

> What is the applicable statute of limitations for a claim against the State of Hawaiʻi alleging an unlawful taking of "[p]rivate property . . . for public use without just compensation," Haw. Const. art. I, § 20?

We do not intend our phrasing of the question to restrict the Hawaiʻi Supreme Court's consideration of the relevant issues.  If the Hawaiʻi Supreme Court accepts review of the certified question, "it may reformulate the [question] in light of the parties' contentions or other relevant considerations." *Apana*, 574 F.3d at 684.

## V.  ORDER

The clerk of our court is hereby ordered to transmit a copy of this order to the Hawaiʻi Supreme Court under official seal of the United States Court of Appeals for the Ninth Circuit.  *See* Haw. R. App. P. 13(c).  The clerk is also ordered to provide "original or copies of all or any portion of the record" in this case as "[t]he Hawaiʻi Supreme Court may, in its discretion, require."  *Id.*

Further proceedings in this court are stayed pending the Hawaiʻi Supreme Court's decision.  This case is withdrawn from submission and the clerk is directed to administratively close this docket, pending further order from this court.  The parties shall file a joint notice in this court within one week of the Hawaiʻi Supreme Court's decision to accept or reject certification.  If the Hawaiʻi Supreme Court accepts the certified question, the parties shall file a joint status report to this court every six months after the date of acceptance, or more frequently if circumstances warrant.  This panel retains jurisdiction over further proceedings in this court.

**SO ORDERED.**

FOR THE COURT:

Jay S. Bybee, Presiding Judge
U.S. Court of Appeals for the
Ninth Circuit